Nov. Term,<br>1833.<br><br>JORDAN<br>v.<br>TURNER.

---

### JORDAN *v.* TURNER.

*A.* mortgaged certain goods to *B.* to secure the payment of a *bona fide* debt, but continued in possession of the goods with the mortgagee's permission, and used and disposed of them as his own. The mortgage stated that the goods were delivered to the mortgagee in his own right, subject to be redeemed on the payment, &c. *Held* that, under these circumstances, the mortgage was fraudulent and void as to the mortgagor's creditors.

ERROR to the *Vigo* Circuit Court.

STEVENS, J.—On the 10th day of *July,* 1830, *Turner,* the defendant in error, became the owner of two judgments, on the docket of a justice of the peace, against one *Moses Chandler,* by purchase, amounting in the whole to the sum of 18 dollars and 50 cents; and on that day, *Chandler,* for the purpose of securing the payment of those judgments to *Turner* on the 1st day of *February,* 1831, made a bill of sale of some goods and chattels to *Turner.* This bill of sale, after stating the amount of the judgments and the purchase of them by *Turner,* says, "Now, for the better security of the above named judgments, I, *Moses Chandler,* do deliver to said *Turner* a certain three years old sorrel stud colt," &c., also, "three two years old steers, and three one year old steers, and one muley black and white cow," also, "one brown mare. The above I deliver to said *Turner, bona fide,* in his own right, subject to be redeemed by the payment of the above named judgments, with interest,

*Wednesday,*<br>*December 4.*

by the 1st day of *February* next." This property was left by *Turner* in the possession of *Chandler*, and *Chandler* used it, traded and trafficked upon it, and treated it as his own. The three one year old steers, which were worth about 5 dollars each, he sold, and appropriated the proceeds to his own use. The three two years old steers he sold for 16 dollars, and appropriated the money to his own use. The cow was worth about 9 dollars, and he appropriated her to his own use. The mare was worth about 20 dollars, and he used and possessed her as his own until she died. The horse was worth about 40 dollars, and he possessed and used him as his own, and finally exchanged him for the horse in question, which is worth about 50 dollars.

*Jordan*, the plaintiff in error, recovered a judgment against *Chandler* for the sum of 37 dollars and 50 cents, besides interest and costs, on which an execution issued on the 24th day of *January*, 1831, and on the next day was levied on the aforesaid horse, as the personal goods of *Chandler*. *Turner* claimed the horse as his property, under the aforesaid bill of sale; on which claim a trial in the *Vigo* Circuit Court was had, and the horse found to be *Turner's* property under the bill of sale, and not subject to *Jordan's* execution.

The only question before the Court is, whether the horse in question is subject to *Jordan's* execution, as the personal goods of *Chandler*, or not?

*Turner*, the defendant in error, by his counsel, insists that his claim is *bona fide*, legal, and valid against the creditors of *Chandler*, because he holds the property under a mortgage, and not as a pledge, and that a mortgage is good and valid, although the goods remain in the possession of the mortgagor; and that the equity of redemption, in mortgaged goods and chattels, cannot be seized and sold on execution; and, further, that the interest of the mortgagee in the goods becomes absolute at law, if they are not redeemed at the appointed time; and that, in this case, the day of payment is now past without payment being made, and therefore his interest in the goods is absolute at law.

The law is well settled, that there is a wide difference between a pledge and a mortgage of personal goods. A pledge is a deposite of goods redeemable on certain terms, either with or without a fixed day of redemption. Delivery must accompany a pledge, and is in all cases essential to its validity. The

general right of property of the pledgor in the goods does not pass to the pledgee, and the pledgee only has a special property in them; and so long as the pledgor's right to the pledge remains unextinguished, his interest is liable to be sold on an execution, and the purchaser under the execution succeeds to all the pledgor's rights, and is entitled to redeem the pledge. *Kemp* v. *Westbrook*, 1 Ves. sen. 278. A mortgage is quite different; it is a sale of the goods, and a conveyance of the title to the mortgagee, upon condition, and becomes an absolute interest at law if the condition be not performed, and in certain cases is valid without delivery: and it has been long the established doctrine in *England*, and we think it is good law here, that the equity of redemption in mortgaged goods and chattels cannot be sold on execution. The creditor's remedy in such cases is by a bill in equity.

There is, however, in every disposition of goods and chattels, an essential circumstance which must never be lost sight of, and that is, that the transaction must be *bona fide*, and perfectly free from fraud or collusion. The common law makes void all acts that depend upon fraud or collusion. The genius of the common law opposes itself to every species of fraud or collusion, but is tender of presuming the facts from circumstances, and requires every thing to be made manifest or plainly inferable. Therefore, with a view to enforce the principles of the common law, several statutes have made void all fraudulent and collusive conveyances, as against creditors and purchasers. The object of these statutes is to aid the common law in ferreting out fraud and collusion; and the expounders, by legal adjudications, have given them a very liberal construction, so as to supply the defect of the common law, and have extracted from them certain operative and beneficial rules for the suppression of fraud. These adjudications have fixed certain transactions and things as evidence of fraud, and have established certain requisites and landmarks, by which to test the dealings of men. These evidences of fraud, and these required land-marks, may sometimes operate unjustly on the honest dealings of men, and produce some inconvenience, yet the weight of inconvenience is trifling when compared with the salutary efficacy and influence which they have in regulating certain transactions.

These adjudicated rules apply themselves to the condition of things as they are found, and are so moulded as to correspond

with their nature, as they generally exist among men, and in this respect, have made a material and obvious distinction between real and personal property as to possession. Since the introduction of conveyances in writing, and tranfers through the medium of uses, the title to real estate is only evidenced by the title papers; the visible occupation and use furnish no evidence of the possessor's title. But possession and use of personal goods are the strongest index of ownership. There is no way by which third persons and strangers can come at the knowledge of who is the owner of personal things, but by seeing in whose possession they are: there is no other general medium for deciding on the ownership of such property. Possession being evidence of title to, and ownership of, personal goods, it follows as a legal rule of decision, that the visible possession and controul by the seller of goods and chattels, after he has parted with his property in them, with the consent of the buyer, is evidence of an intention to deceive third persons.

It is settled among the early principles of the common law, that if a conveyance be made, purporting to be a conveyance of personal goods immediately and absolutely, that it is void as to creditors of the vendor, unless the possession accompanies the conveyance. Hence it is an established rule, that an absolute conveyance of personal goods, the possession of which remains with the vendor, is of itself sufficient evidence of fraud as to creditors. It is not merely evidence of fraud from which fraud may or may not be inferred, but it is in law language of itself sufficient evidence of fraud, and from which the law exclusively infers that there is fraud, whether intended or not, so far as the creditors of the vendor are concerned. This conclusion, however, of fraud, arising on the fact of possession by the vendor, being a legal presumption, is not unconditionally absolute: it may be, in certain cases, rebutted and explained by legal evidence, if such evidence and such retaining of possession by the vendor, are consistent with the contract; as, if it be a conditional sale, or a mortgage; or if it is part of the original contract, that the vendor should retain possession until after a default should be made in the condition of the sale; or where the situation of the parties or the goods is such, that immediate possession cannot be taken, as in the case of a ship at sea, or a growing crop; or where, from any other legal and bona fide circumstance, immediate possession cannot be taken. In all

such cases, the possession by the vendor after he has parted with his property in the goods, is consistent with the conveyance, and may be explained by parol evidence; but no evidence can be admitted to explain a possession which is inconsistent with the contract.

The defendant in error, in this case, claims under a mortgage, the consideration of which is supposed to be correct and valuable, but the plaintiff in error contends that the mortgage is not *bona fide*, that it is, as to creditors of the mortgagor, fraudulent and void. As to the possession of mortgaged goods, a mortgage stands on the footing of other conveyances of personal things, and possession must accompany the conveyance, unless there is some contract or circumstance, by which the mortgagor can retain 'the possession consistently with the contract. In the cases of *Harris* v. *Sumner*, 2 Pick. 129, and *Murray* v. *Riggs*, 15 Johns. Rep. 571, it is decided, that if a creditor takes a conveyance from his debtor of personal goods, to secure the payment of his debt, this being his only motive, but at the same time for the benefit of his debtor, inserts provisions that delay, hinder, or defraud other creditors, the conveyance is bad. In the case of *Clow* v. *Woods*, 5 Sergt. & Rawle, 275, it was held in the case of a mortgage on personal goods to secure the payment of debts, that if the mortgagor remained in possession of and used the goods, they were subject to the execution of another creditor. In the cases of *Homes et al.* v. *Crane*, 2 Pick. 607,—*Haskell* v. *Haskell*, 3 Green. 425, it is decided, that where a debtor sells his personal effects, such as machinery, &c. to his creditor, with a condition in the bill of sale, to be void on the payment of the debt, and the creditor takes possession of the goods and then leaves them to the debtor, such bill of sale amounts to a mortgage, and the after possession of the debtor is *prima facie* evidence of fraud. In the case of *Paget* v. *Perchard*, 1 Esp. R. 205, the creditor took possession under his bill of sale, but suffered the vendor to sell the property in the usual way of his trade, and such possession was adjudged colourable, and the bill of sale void. In the case of *Wordall* v. *Smith*, 1 Camp. 332, Lord *Ellenborough* said, "There must be a *bona fide*, exclusive, and substantial change of possession, under an assignment, or it is fraudulent as against creditors. A concurrent possession with the assignor is colourable. The possession must be exclusive."

40

In the case under consideration, the mortgagor retained the possession of the goods inconsistently with, and contrary to, the face of the mortgage, and such possession, unexplained by evidence, is of itself sufficient evidence of fraud as to creditors. No evidence was offered to explain that possession, and show that it was consistent with the mortgage; and it is, at least, doubtful, whether such evidence could have been received, if it had been offered. Such evidence would contradict the face of the mortgage; the mortgage being positive and direct that the mortgagor, at the time and place of making the mortgage, delivered the goods to the mortgagee to hold as his own, in his own right, subject to be redeemed, &c. We incline to think that such evidence could not be received under this mortgage, if it were offered. It is, however, wholly immaterial whether such evidence be received or not. The case does not stop at that point; the mortgagor not only kept possession of the goods, but he also used and treated them as his own; converted them to his own use; traded and trafficked on them as his own; sold them as his own, and converted the proceeds to his own use. These proceedings are not only contrary to the face of the mortgage, but are inconsistent with, and in direct opposition to, the intention, spirit, and meaning of it, and render it wholly fraudulent and void as to creditors; consequently, the horse in question is subject to the execution of *Jordan* (1).

BLACKFORD, J., being indisposed, was absent.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*C. Dewey*, for the plaintiff.

*J. Farrington*, for the defendant.

(1) Vide note to *Chinn* v. *Russell*, Vol. 2, of these Rep. 174.—*Watson et al.* v. *Williams et al.*, and *Hankins et al.* v. *Ingols*, in this Court, *May* term, 1835, post.