May Term, 1835.

WATSON
v.
WILLIAMS.

---

WATSON and Another *v.* WILLIAMS and Another.

An execution was levied on certain goods found in the possession of the execution-debtor. A third person claimed the goods under a mortgage, which had been previously executed to him in good faith by the execution-debtor, to secure the payment by a given time of a just debt. Nothing was said in the mortgage as to which of the parties should have possession of the goods. At the time the mortgage was executed, the goods were delivered to the mortgagee and were left by him with the execution-debtor, in whose possession they remained until the time of the levy.

*Held*, on a trial of the right of property, that the mortgagor's possession of the goods was not conclusive evidence of fraud as to creditors; but that his possession might be explained by parol evidence, and shown to be fair and consistent with the contract.

Thursday, May 28.

ERROR to the *Vigo* Circuit Court.

STEVENS, J.—Trial of the right of property. An execution

of *fieri facias* in favour of *Williams* and *Chase* against one *Jackson*, was levied on three pair of blacksmith's bellows, and other blacksmith's tools, as the property of said *Jackson*, being found in his possession. *Watson* and *Allen* claimed the property; and such proceedings were had upon the claim, that it was finally tried by a jury in the Circuit Court, and found to be the property of *Jackson*, and subject to the execution of *Williams* and *Chase*. *Watson* and *Allen* claim under a mortgage deed, in the usual and regular form of mortgage deeds, with a provision that if the said *Jackson* should well and truly pay and satisfy, on or before the 20th of *November*, 1833, a certain judgment due from him to them, the said *Watson* and *Allen*, for the sum of 31 dollars, &c., and also pay one note of 17 dollars, &c. due from him to them, the said *Watson* and *Allen*, on or before the 20th of *January*, 1834, then the mortgage to be void, &c.

The record also shows that the mortgage was proved to have been made in good faith, and for value; that *Jackson* owed the money mentioned in the condition; and that it still remained unpaid. It was also further proved, that, on the day the mortgage was entered into and made, the mortgaged goods were delivered to *Watson* and *Allen*, the mortgagees; and that they left them with the mortgagor, *Jackson*, where they remained until executed. The record further shows, that *Watson* and *Allen* then offered to prove and explain by proof, why they had thus left the goods with the mortgagor, and to show that such possession was not inconsistent with the mortgage, &c.; but the Court refused to admit the evidence to go to the jury. It further appears of record that the Court charged the jury, if the property in dispute remained in the possession of *Jackson*, after the execution of the mortgage deed, it was of itself evidence of fraud as to creditors, if that possession was inconsistent with the terms of the mortgage; and that the terms of the mortgage were absolute, and therefore the subsequent possession by the mortgagor could not be explained by any testimony offered.

The only question presented in this case is, whether the mortgagor's subsequent possession of the mortgaged goods can be explained, by parol evidence, under the terms of the mortgage deed?

This has long been, and it seems as if it would ever be, a vexed question. There is no doubt that the visible possession and control by the mortgagor or seller of goods and chattels, after he has thus mortgaged or sold his property in them, with the consent of the mortgagee or buyer, is evidence of fraud. That far the question is settled, both in *England* and *America;* but the great point of controversy is, whether the fraud which is thus to be inferred from the fact of possession, is an unconditional and absolute presumption of fraud; or whether the fact is only evidence of fraud, and is susceptible of explanation by proof to a jury?

In *England*, in the case of *Stone* v. *Grubham*, 2 Bulst. Rep. 225, it was held, that the subsequent possession of the vendor of a chattel was not fraudulent, if the bill of sale was conditional, for the payment of money, and the bill by its terms showed that the vendor was to retain possession until default was made. And in the case of *Bucknal* v. *Roiston*, Prec. in Chan. 285, a bill of sale of goods was given; and it appeared upon the face of the bill that it was given as collateral security, and that the vendor was to keep possession, &c.; the Lord Chancellor held that it was not fraudulent. Again, in the case of *Cadogan* v. *Kennett*, Cowp. 432, where household goods were transferred to trustees, it was held that those goods were protected from execution, although the grantor continued in possession. The Court said that the transaction was fair, and that it was a part of the trust that the grantor should continue in possession. But in the case of *Worseley* v. *de Mattos & Slader*, 1 Bur. Rep. 467, Lord *Mansfield* strongly insists that there is no distinction between absolute and conditional sales; that a continuance in possession by a mortgagor was fraudulent at common law, and void by the statute of *Elizabeth;* and in that case it was held that a mortgage of goods, with the possession retained by the mortgagor, was fraudulent in law equally as it would be upon an absolute bill of sale. And finally in the case of *Edwards* v. *Harben*, 2 Term Rep. 587, the principle was emphatically settled, that if the vendee took an absolute bill of sale, to take effect immediately by the face of it, and the goods were left in possession of the vendor, it was in law a fraud *per se;* but that in all cases where that possession might be consistent with the face of the conveyance, the possession might be explained by proof.

After this, the law appeared for many years to be permanently settled in that country; and it was repeatedly decided, that an absolute sale of chattels unaccompanied by possession was fraudulent in law, and void as to creditors; that the change of possession must be substantial and exclusive, and not concurently with the assignor. Recently, however, the doctrine as it was then settled has been much shaken.. The modern *English* decisions appear to establish a more lax rule; the Courts now say that the question of fraud in such cases is a fact for a jury to determine; and that a continuance in possession by a mortgagor or vendor is only *prima facie* a badge of fraud; and that the presumption of fraud arising from that circumstance, may be rebutted by explanations showing the transaction to be fair and honest, and giving a reasonable account of the object of that possession; that the fraud thus arising is not an absolute inference of law, but one of fact for a jury. *Wooderman* v. *Baldock*, 8 Taunt. 676.--*Kidd* v. *Rawlinson*, 2 Bos. & Pull. 59.—*Cole* v. *Davies*, 1 Ld. Raym. 724.—Lady *Arundell* v. *Phipps*, 10 Ves. 140.—*Watkins* v. *Birch*, 4 Taunt. 823.—*Jezeph* v. *Ingram*, 8 Taunt. 838.—*Latimer* v. *Batson*, 4 Barn. & Cress. 652.—*Leonard* v. *Baker*, 1 Maule & S. 251.—*Steward* v. *Lombe*, 1 Brod. & Bing. 506.—*Eastwood* v. *Brown*, Ryan & Moody, 312.—*Reed* v. *Blades*, 5 Taunt. 212.—*Storer* v. *Hunter*, 3 Barn. & Cress. 368.

In the Supreme Court of the *United States*, the doctrine as settled in *England*, in the case of *Edwards* v. *Harben*, is established. *Hamilton* v. *Russell*, 1 Cranch, 309.—*United States* v. *Conyngham*, 4 Dall. 358.—*Meeker* v. *Wilson*, 1 Gall. Rep. 419.

In the state of *Virginia*, the same principle has been directly and repeatedly settled. *Alexander* v. *Deneale*, 2 Munf. 341. It may, however, be proper to observe that in the case of *Land* v. *Jeffries*, 5 Rand. Rep. 211, the rule was qualified. In that case the Court held, that the possession of the vendor of goods and chattels is only *prima facie* fraudulent, and not such conclusive fraud, in any case, as to bar all explanation. But in the case of *Claytor* v. *Anthony*, 6 Rand. Rep. 285, the Court re-examines the whole doctrine, overrules the decision in the case of *Land* v. *Jeffries*, 5 Rand. Rep. 211, and ably maintains the rule established by the previous decision.

In *South-Carolina*, the *English* rule, as established by the case of *Edwards* v. *Harben*, is declared by all the judges to be

May Term,
1835.

WATSON
v.
WILLIAMS.

the settled rule. *Kennedy* v. *Ross*, 2 Const. Rep. 125.—*Hudnal* v. *Wilder*, 4 M'Cord's Rep. 294. In *Tennessee*, the same rule is adopted. *Ragan* v. *Kennedy*, 1 Ten. Rep. 91. But in *Kentucky* the modern *English* rule is adopted. *Baylor* v. *Smithers'* heirs, 1 Littell's Rep. 105.

In *Pennsylvania*, the general principle is emphatically recognised, that on an absolute sale or assignment of chattels, possession must accompany and follow the conveyance, and vest exclusively in the vendee, or it is fraudulent in law, though there be no fraud in fact; and in the case of a mortgage of goods an absolute delivery is requisite; the statement on the face of the mortgage, that possession is to be retained by the vendor, is not sufficient; that such a transaction is fraudulent *per se*. *Dawes* v. *Cope*, 4 Binn. 258.—*Babb* v. *Clemson*, 10 Serg. & Rawle, 419.—*Shaw* v. *Levy*, 17 ib. 99.—*Hower* v. *Geesman*, ib. 251.—*Clow* v. *Woods*, 5 ib. 275.—*Cowden* v. *Brady*, 8 ib. 510.—*Dean* v. *Patton*, 13 ib. 345.

In *New-Jersey*, *Connecticut*, and *Vermont*, the same rule is rigidly adhered to. The delivery of possession, in the case of a sale or a mortgage of goods, is held to be necessary, if it be practicable; that there must be an actual and not a colourable change of possession; that on a sale or mortgage of chattels, an agreement either in or out of the conveyance, that the vendor may keep possession, is (except in special cases, and for special reasons, to be shown to and approved of by the Court,) fraudulent and void, as to creditors and *bona fide* purchasers. *Chumar* v. *Wood*, 1 Hals. Rep. 155.—*Patten* v. *Smith*, 5 Conn. Rep. 196.—*Fletcher* v. *Howard*, 2 Aiken's Ver. Rep. 115.—*Beattie* v. *Robin*, 2 Ver. Rep. 181.

In the state of *New-York*, the question has been continually vibrating from side to side. In the cases of *Barrow* v. *Paxton*, 5 Johns. Rep. 258, and *Beals* v. *Guernsey*, 8 ib. 446, the Court says, that the circumstance of the possession of goods not accompanying the sale or mortgage of them, is only *prima facie* evidence of fraud, and it may be explained. In the case of *Sturtevant* v. *Ballard*, 9 Johns. Rep. 337, the subject received a thorough discussion, and most of the authorities both in *England* and *America* were reviewed, and the *English* doctrine as settled in the case of *Edwards* v. *Harben* adopted. In the case of *Ludlow* v. *Hurd*, 19 Johns. Rep. 218, the Court said

that the question was unsettled and left it open for debate. And finally, in the case of *Bissell* v. *Hopkins*, 3 Cowen's Rep. 166, the doctrine established in the case of *Sturtevant* v. *Ballard* was entirely overthrown. Afterwards in the case of *Divver* v. *M'Laughlin*, 2 Wend. 596, the rule in the case of *Sturtevant* v. *Ballard* was again recognised. At this point the legislature of the state interfered, and in their late revised laws put the question to rest. They enacted, that unless the sale or assignment be accompanied by immediate delivery, and followed by an actual and continued change of possession, it shall be presumed to be fraudulent and void as against creditors, &c.; and shall be conclusive evidence of fraud, unless it shall be made to appear, on the part of the persons claiming under such sale or assignment, that the same was made in good faith, &c.

In *Massachusetts, New-Hampshire,* and *Maine,* it is settled, that the retention of possession by the vendor of goods and chattels, after an absolute sale or a mortgage of them, is only *prima facie* evidence of fraud, and it may be explained by proof. *Brooks* v. *Powers,* 15 Mass. Rep. 244.—*Bartlett* v. *Williams,* 1 Pick. Rep. 288.—*Homes* v. *Crane,* 2 ib. 607.—*Wheeler* v. *Train,* 3 ib. 255.—*Ward* v. *Sumner,* 5 ib. 59.—*Shumway* v. *Rutter,* 7 ib. 56.—*Haven* v. *Low,* 2 New H. Rep. 13.—*Coburn* v. *Pickering,* 3 N. Hamp. Rep. 415.—*Reed* v. *Jewett,* 5 Greenleaf's Rep. 96.—*Holbrook* v. *Baker,* 5 ib. 309.

In *North-Carolina,* the rule is much more relaxed; the whole subject, in all cases, is submitted to a jury, and very little weight is attached to the circumstance of possession in any case. *Vick* v. *Kegs,* 2 Hayw. Rep. 126.—*Falkner* v. *Perkins,* ib. 224.— *Smith* v. *Neil,* 1 Hawk. Rep. 341.—*Trotter* v. *Howard,* ib. 320. *Howell* v. *Elliott,* 1 Badg. & Dev. Rep. 76.—In 1830, the legislature of this state interfered, and have placed the subject on a more sure footing, by requiring a registry of all such mortgages, conveyances, &c., to make them valid (1).

We have thus run over and brought into immediate contact and view, the various leading adjudications in both *England* and *America* on this troublesome question; not so much for the purpose of attempting to extract from them any definite rule, as to show the difficulty that surrounds the question in all Courts, and to show the vacillation and confliction exhibited in the decisions of the most august and profound tribunals known to

the world. The most enlightened and profound Courts and jurists have failed, as yet, in establishing any fixed and satisfactory rule. This failure has not resulted from a lack of talents, learning, or industry; and therefore we are forced to conclude, that the matter is not susceptible of being reduced to rules more certain or more satisfactory. Each case must, to some extent, stand upon its own circumstances; and these circumstances are as various and different, as the transactions and ingenuity of men, and cannot, perhaps, be all reduced to any certain and fixed rule, without doing the most flagrant injustice to many.

All the adjudications may, perhaps, be properly ranked under two great general rules; but to these rules the exceptions are almost infinite.

· A majority of the *American* states, as well as the Supreme Court of the *United States*, and also the decisions in *England* in the age of *Buller* and *Mansfield*, take the position, that the question which is inferred from the subsequent possession of the mortgagor or vendor, devolves upon the Court; that it is an inference of law, and requires the opinion to be formed on the single circumstance of possession; and that no explanation is admissible. This rule was asserted in an explicit and decided manner in *England* in the days of *Buller* and *Mansfield;* and has been sustained with greater precision, and more powerful and convincing arguments, by the aforesaid *American* Courts. In support of that position, it is argued that there is the same reason for an inflexible rule of law, that a vendor of chattels shall not, at the expense of his creditors, sell them and yet retain the use of them, as there is for that much admired and inflexible rule of equity, that a trustee shall not be permitted to either buy or speculate in the trust fund; or for that other salutary and fixed rule, that the voluntary settlement of property shall be void against existing creditors; that such rules are made to destroy all temptation to fraud; that private sales and transfers of property and secret trusts between the vendor and vendee of chattels, are and may be of such a secret and private character, that it is impossible for the party aggrieved to show the fraud, although it may really exist; that human testimony is too infirm to ferret out and expose to view private and secret trusts; and that therefore the law ought to cut them off, at the threshold, and bar the door against every

species of private trust or imposition, which from its nature might be inaccessible to the eye of the Court.

The other *American* decisions and ·the modern *English* decisions have established another rule, which is more lax and popular. By these decisions, the question of fraud is referred to the jury, the whole transaction is looked into, and every honest apology and explanation that the party can show is admitted. The argument used to sustain this rule is, that the retention of the goods by the vendor, after he has parted with his property in them, injures no one, unless a new credit be given, or an old one extended, under a mistaken belief that the goods belong to the vendor; and that the few cases of that kind which may ever happen, ought not to introduce so stern and inflexible a rule, as to make such conveyances void against every description of creditors; that no general good can grow out of such a rule; but that much injustice and hardship must often be the consequence of the exercise of it; and that the daily transactions, business, and dealings of men forbid it.

As was before remarked, the rule is settled by all the Courts in both *England* and *America,* that if the mortgagor or vendor of goods retain the possession of them, after they are sold or mortgaged, with the consent of the mortgagee or vendee, such subsequent possession is, of itself, sufficient evidence of fraud as to creditors, unless that possession be explained, and shown to be fair and consistent with the sale or mortgage; but the great and interesting subject of difficulty is, in determining in what cases evidence can be received to explain such subsequent possession. In the case of *Jordan* v. *Turner,* 3 Blackf. 309, this Court gave a rule on that subject. The Court in that case said, that the presumption of fraud arising from subsequent possession might, in certain cases, be rebutted and explained by legal evidence; as in cases of conditional sales or mortgages; or in cases where it is a part of the original contract, that the vendor should retain possession until after default be made in the condition of the sale; or in cases where the situation of the parties or the goods is such, that immediate possession cannot be taken. In all such cases, the possession by the vendor or mortgagor, after he has parted with his property in the goods, is consistent with the contract and may be explained by parol evidence. In that case the Court intimated a doubt, whether any evidence could be received to explain

the subsequent possession then under consideration; but the doubt there arose from the language of the conveyance itself. The mortgage in that case at the close stated, that the goods and chattels mortgaged were *delivered to the mortgagee, bona fide, in his own right to possess,* &c.    The subsequent possession in that case contradicted the face of the deed under which *Turner* claimed; and any evidence to explain must have contradicted the express terms of the deed, which cannot be permitted in any case.    We remain satisfied with the rule established in the case of *Jordan* v. *Turner,* and will proceed to apply it to the case now before us.

*Watson* and *Allen* claim under a mortgage, and the question is,—could evidence be received to explain the subsequent possession of the mortgagor, without contradicting the terms of the mortgage deed ; or in other words, does the subsequent possession of the mortgagor conflict with or contradict the terms of the mortgage deed?    In absolute bills of sale, there is always a clause stating that the goods sold are delivered; but it is not so with mortgages.    A mortgage is not an absolute sale ; it is conditional, and only becomes absolute upon default being made; and it is usual for the mortgagor to retain possession until default.    Anciently it was usual to insert a clause in the mortgage, that the mortgagor should retain possession until default; but Chancellor *Kent* says, that at this day that is not done; that the understanding and practice now is, that the mortgagor remains in possession until default is made, unless there is a contract to the contrary.    Delivery and possession are essential to the validity of a pledge, but it is not so with a mortgage.

In the mortgage now before us, there is not one word about who shall have possession of the mortgaged goods; consequently, the subsequent possession of the mortgagor does not contradict the terms of the deed of mortgage.    If then the after possession of the mortgagor does not contradict the terms of the deed, evidence may be received to explain that possession, and show that it was fair and consistent with the contract.

There is no evidence in this case showing that the mortgagor *used, traded on, or treated the mortgaged goods as his own;* nor is there any proof, that default had been made in the payment of the mortgage money, at the time the goods were seized and taken in execution: the only question present-

ed is as to the inference of law arising from the subsequent possession of the mortgagor (2).

We think the instruction of the Court to the jury was wrong; and for that cause the judgment must be reversed.

*Per Curiam.*—The judgment is reversed, and the verdict set aside, with costs. Cause remanded, &c.

*E. M. Huntington*, for the plaintiffs.
*J. D. Taylor*, for the defendants.

May Term, 1835.

(1) It is now required, in *Indiana*, by statute, that every mortgage of personal property within the state, shall be acknowledged or proved and recorded within 20 days after its execution, in the office of the recorder of the county in which the mortgage is executed. Rev. Stat. 1838, p. 470.

(2) Vide note to *Chinn* v. *Russell*, Vol. 2 of these Rep. 174.—*Hankins et al.* v. *Ingols*, the present term, *post.*—*Foley et al.* v. *Knight*, *Nov.* term, 1837, *post.*—2 Kent's Comm. 3d Ed. p. 512 to 536.