# TALBOT SUPERIOR COURT,

## September Term, 1842.

MARTHA H. FERGERSON and others vs. JAMES FERGERSON, JESSE CARTER and others.

*Bill for Discovery, Relief and Injunction.　Demurrer.*

A Court of Chancery will not correct errors of Law; or in other words, where the only ground on which relief is asked, is an ignorance of the Law, a Court of Equity will not interfere.

This bill states that the complainant, *Martha H. Fergerson,* is the wife, and the other complainants the minor children of the respondent, *James H. Ferguson*—that on the first day of September, eighteen hundred and thirty-eight, the respondent, *Fergerson,* was in a condition of pecuniary insolvency, and without the means of providing for the wants and necessities of the complainants—that one *Richard Christmas,* the father of the said *Martha,* and grandfather of the other complainants, actuated by motives of natural love and affection, and the sense of the destitute situation of the complainants, made to them a deed of gift of four slaves, a copy of which is attached as an exhibit to the bill, and which is in these words, to wit: "This indenture made and entered into this the first day of September eighteen hundred and thirty-eight, between *Richard Christmas* of Muscogee county and State aforesaid of the one part, and *Martha Henrietta,* daughter of the said *Richard Christmas,* and wife of *James Fergerson* of Talbot county in said State of the other part—Witnesseth, that the said *Richard Christmas,* for and in consideration of the natural love and affection, which he has and bears unto and for the said *Martha Henrietta,* she being his daughter, and for and in consideration of the sum of one dollar, to him in hand paid, by the same *Martha Henrietta,* at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath given, granted, aliened, and confirmed, and by these presents doth give, grant, and alien and confirm unto the said *Martha*

*Henrietta,* and to her lawful children for her, and their own proper benefit and behoof, a certain negro woman named *Athelia* and her three children by name *Sophia, Henry* and *Dick :* To have and to hold unto her the said *Martha Henrietta,* and to her lawful children, to her and to their own proper use, and benefit, and behoof, forever, in fee simple, independent of any interest, which they or either of them, may have in any real or personal estate, hereafter, at or after my death—In witness whereof I have hereunto set my hand and seal this the day and year above written in presence of 3 *Burt, Pleasant F. Hardwick.*

(Signed,) *Richard Christmas.* [SEAL.]"

The bill further states, that the said *Richard* intended by said deed of conveyance to settle the property mentioned therein, upon the said *Martha,* and to her separate and exclusive use, and to debar the said *James,* and his creditors, from the same—that through ignorance of the parties as to the proper mode of framing the instrument so as to create, and settle a separate estate on the said *Martha,* the wife of said *James Fergerson,* and the want of knowledge that the said deed, as executed, would convey to the said *Fergerson* the interest designed for his wife exclusively, the deed appears in the form in which it is seen at bar, that the defendant, *Carter,* and the other defendants, are creditors of the said *Fergerson,* and have levied on the property included in said conveyance, and are seeking to have the same sold by the Sheriff of the county, to satisfy their demands. The prayer of the bill, is, that the parties to the said deed may be permitted to correct the mistake alleged by them to have been committed, as to the legal effect of the instrument as it is written, and to have the same decreed to settle a separate estate on the said complainants to the exclusion of the husband, and his creditors, for the appointment of trustees, to take charge of the sole interest of the said *Martha,* and that in the meantime the creditors be enjoined from selling said property or any part thereof, and for general relief. To this bill, a general demurrer, for want of equity, is filed. From this statement of the case it is apparent, that the bill imports an application to the Court in behalf of the grantees in the deed for the correction of an error in Law, alleged to have taken place in framing the instrument, and for the reforming the language and legal effect of the instrument, so as to make it speak the supposed intention of the parties

[Fergerson & others vs. Fergerson, Carter & others.]

thereunto, contrary to what is written, as those intentions shall be shewn, by parole evidence, to have been at the time the deed was executed. The broad and general question of the right of a Court of Chancery to correct, by its decree, errors or mistakes in *Law* committed by individuals, has been much discussed, and variously decided. We are left to select from the different, and conflicting authorities on the subject, those we think most conformable to correct principles, and most conducive to the general good. It should be first observed, that the deed in question, is a full, unambiguous and perfect instrument. No omissions, mistakes or incongruities, appear on the face of it. It is, too, an instrument of great solemnity, being sealed and witnessed. Let it be further borne in mind, that it is not pretended that any misapprehension of the facts on which the deed was founded, existed between the parties at the time the instrument was executed, or that any fraud, deceit, or imposition, was practised to procure it. But the prayer of relief is placed on the naked ground of an error in Law, to be shewn by verbal testimony in direct contradiction to the plain and explicit language of the deed. The conveyance of the property in contest, although nominally made to the complainants, *Martha H.* and her children, is, in law, a conveyance to the respondent, *Fergerson*, to the precise extent to which the said *Martha* claims to be entitled. This, by virtue of that legal unity which exists between husband and wife. In order to prevent the marital rights of the husband from attaching to property conveyed to the wife, it is necessary that the conveyance contain words of express *exclusion* of him, or that the intent to exclude him do otherwise explicitly appear. The words in the gift or grant " to her," or "to her own use," will not have the effect in Law of vesting a separate estate in the wife. To this point the authorities are explicit. 1 *Chit.* Gen. Prac. 60. *Clancy* on Rights, 267. 1 *Brown's* Ch. R. (by Belt,) 383. 4 *Mad.* Ch. Rep. 216. *Story's* Com. on Equi. Indeed the bill is framed to meet this construction of the conveyance. So far then, as the intention of the parties to the deed is to be derived from the face of the instrument itself, it is conclusive in behalf of the title of the husband to the property in dispute. Now, on the score of credibility, this solemn and deliberate depositary of the contract of the parties, other things being equal, stands on higher ground, as a means of establishing the intention of the parties, than the mode of proof by which it is sought to

r

be set aside. "Parole evidence is not admissible to contradict, or vary, or add to, the terms of a deed."—1 *Phil.* on Evi. 548. 2 *Stark.* 548. That relief will be granted against a deed where it has been executed under a mistake of material facts, or where fraud, or imposition, unconnected with guilt or criminal negligence on the part of the applicants, has been practised, is certainly true, but in the absence of some special ground of relief, the deed is conclusive upon the parties to it. We proceed to ascertain whether a mistake of the Law governing the instrument, can, in the circumstances stated in the bill, be made the reason for reversing or varying the terms of the conveyance. That "ignorance of the Law, which every man is bound to know, excuses no man," was an early maxim in the Law.—4 *Black.* 28. It is true, that the principle is here spoken of in more direct reference to the subject of criminal Laws, and the liability incurred by those who violate them, but the same doctrine has been very generally extended to civil cases also, alike at Law, and in Equity. "It is a well known maxim, that ignorance of Law will not furnish an excuse for any person either for a breach or an omission of duty : *ignorantia legis neminem excusat :* and this maxim is equally as much respected in Equity as in Law."—1 *Story,* Com. on Eq. 121. 1 *Fonb.* Eq. B. 1, Ch. 2, sec. 7, note (v.) see page 109. 1 *Lyon* v. *Richman,* 2 *Johns.* Ch. Rep. p. 60. "The probable ground for the maxim is that suggested by Lord ELLENBOROUGH, that otherwise there is no saying to what extent the excuse of ignorance might not be carried."—1 *Story's* Com. on Equity, 123. It is too easily understood to require proof, that the administration of criminal Law cannot be insisted on if the subjects of it are permitted to defend on the ground of ignorance of it—nor can the rights of property or reputation be protected, if individuals are allowed to repudiate the construction and operation of legal principles on their dealings and conduct. The rule that all must be held to know the law, as a general rule, is founded in the necessity of it, to government and social order. I lay down the principle with some qualification, for there are cases of very high authority, in which mistakes of the Law of a peculiar character have, in some circumstances, been relieved against in a Court of Chancery. A familiar instance is that of a defective execution of a power by one entrusted with it : As if an authority to sell land be conveyed in writing, and the deed made under it be informally executed through the ignorance of the

[Fergerson & others vs. Fergerson, Carter & others.]

draftsman. In that case, the intentions of the parties being apparent on the face of the papers themselves, and the error resting in the intrinsic proof contained in the transaction itself, a Court of Equity will step in, and give effect to the real intentions of the parties to the conveyance.—1 *Mad.* 52. 1 *Story's* Equi. 185. But when the conveyance attacked is in itself a formal and complete one, and is drawn in the form chosen by the parties, it is not competent to resort to *parole proof* to contradict, and reform it, upon an alleged ignorance of its legal effect." "And if upon the mere ignorance of the Law, men were admitted to overhaul or extinguish their most solemn contracts, and especially those, which have been executed by a complete performance, there would be much embarrassing litigation in all judicial tribunals, and no small danger of injustice, from the nature and difficulty of the proper proofs."—1 *Story's* Equi. 123. I content myself with adding the authority of the Supreme Court of the United States, in the case of *Hunt* v. *Rousmaniere's Adm.*, 1 *Pet.* 2. On the point now at bar, the Court, in the decision referred to, held the following language:—"The question then, is, ought the Court to grant the relief which is asked for, upon the ground of mistake arising from any ignorance of Law. We hold the general rule to be, that a mistake of this character is not a ground for reforming a deed founded on such a mistake, and whatever exceptions there may be to this rule will be found to be not only few in number, but they will be found to have something peculiar in their character."—(See 16 p. of the vol.) I am unable to discover any thing in the case made by this bill, that will take it out of the general rule: on the contrary, there are strong considerations founded in policy and justice, against it. Demurrer sustained.

MARSHALL J. WELLBORN, J. S. C. C. C.