JONES *v.* GOTT.

A bill of sale of goods by a failing debtor, purporting to vest the property absolutely in the vendee in trust for a third person, in consideration of a previous indebtedness of the vendor to such third party, arising out of a breach of trust, is not within § 8 of the statute of frauds.

APPEAL from the *Marion* Court of Common Pleas.

WORDEN, J.—Action by the appellant against the appellee, to secure possession of certain personal property.

The cause was tried by the Court; finding by the Court for the defendant; motion for new trial overruled; exceptions taken, and judgment on the finding.

The evidence is all set out in the bill of exceptions, and consists of one deposition, and an agreement by the parties as to certain facts. The facts, as stated in the said agreement are, that the property in controversy was levied on by the defendant, on an execution in his hands as constable, on a judgment in favor of one *David Kemp,* against one *Albert E. Jones;* that *Cornelia Jones,* the plaintiff, being a sister of said *Albert,* held a bill of sale of the property in controversy, from the said *Albert,* of a date three or four days prior to the date of the said judgment; that said *Cornelia* resided as one of the family of said *Albert,* and that, at the time of the levy on said property, it was in the house occupied by said *Albert* and family, of which *Cornelia* was a member; that at the time of the execution of said bill of sale by said *Albert,* no money was passed, or

paid him for said bill of sale; that said property was then in the house occupied by him and his family; that said bill of sale purported to vest said property in said *Cornelia* absolutely, in trust for one *Lucy Jones*, in consideration of an indebtedness alleged to be owing to said *Lucy*, by said *Albert;* that after the execution of said bill of sale, said *Albert* left *Indianapolis* permanently, leaving his wife and the said *Cornelia* living in the house occupied by him, and the property remained in the house with them, and that said *Albert* was then in failing circumstances. It appears from the deposition, that one *Cornelia Jones*, mother of the plaintiff, by her last will and testament, devised certain real estate in *Youngstown, Ohio*, of the value of from 1,800 to 2,500 dollars, to *Ira Jones*, in trust for said *Lucy Jones*, who, it is to be inferred from the deposition, was *non compos mentis;* that by the terms of the will, upon the death of said *Ira Jones*, which happened about two years after the date of the will, which was dated *February* 6, 1851, the said trust was to be vested in the plaintiff, if she should be in a condition to accept and execute the same, and if not, then the said trust was to vest in said *Albert*, and he was to execute the same; that said *Albert* accordingly took charge of said *Lucy* and said property, until such time as said plaintiff should be able and willing to take charge thereof—the three, *Albert, Cornelia* and *Lucy*, living together, *Cornelia* having full control and management of her said sister *Lucy*—and the said *Albert* used the said property for and instead of said *Cornelia;* that said *Albert* exchanged the said property in *Ohio* for property in *Indianapolis*, and then sold that, and appropriated the proceeds thereof to his own use; that said *Albert* put property consisting of plank-road stock, notes and other property, consisting, as the witness understood, of household property, (the kind of property in controversy,) into the hands of said *Cornelia*, as part indemnity for the sale of said trust property.

The question before us is, whether on the above facts, the plaintiff is entitled to recover. There is no conflicting testimony. The decision below seems to have been upon

questions of law growing out of the facts, as the facts were not disputed.

The ground taken by the appellee is, that the sale by *Albert* to *Cornelia*, the plaintiff, is void under § 8 of the act for the prevention of frauds and purjuries,—1 R. S., p. 301,—because it was not "accompanied by an immediate delivery, and followed by an actual change of the possession of the things sold."

Said section is as follows:

" Sec. 8.   Every sale made by a vendor of goods in his possession, or under his control, unless the same be accompanied by immediate delivery, and be followed by an actual change of the possession of the things sold, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or subsequent purchasers in good faith, unless it shall be made to appear that the same was made in good faith, and without any intent to defraud such creditors or purchasers."

A very brief glance at what appears to be the history of the above legislation, may not be inappropriate.

By the statute of 13th Eliz. c. 5, which is said to be simply declaratory of the common law, it was provided that every gift, grant, bargain, and conveyance of goods and chattels, with intent to hinder, delay or defraud creditors, &c., shall be utterly void, &c.

This statute, it is understood, has been always in force in this state, it being in aid of the common law, and having been enacted prior to the fourth year of the reign of JAMES the first.   The most of the states in the *Union* have also adopted it.   Under this statute, a great diversity of opinion has existed, as to the effect of a vendor or mortgagor retaining the possession of the property sold or mortgaged; some Courts holding that it was fraudulent *per se*, and conclusive, while others held it to be only *prima facie* evidence of fraud, which might be rebutted and explained.   From *Twine's Case*, 3 Co. 80, down to modern times, both in *England* and the *United States*, the decisions have been various and conflicting; but the current of mod-

ern decisions seems to incline to the doctrine that it is only *prima facie* fraudulent.

In *Watson et al.* v. *Williams et al.*, 4 Blackf. 26, Judge STEVENS has, with great industry and research, collected the various conflicting decisions, both in *England* and the *United States*. The question was settled in this state by the decision in that case, and the case following it, of *Hankins et al.* v. *Ingols*, *id.* 35, in which it was held that retaining such possession was only *prima facie* evidence of fraud, which might be rebutted.

In 1843, this principle was, it is believed, for the first time incorporated into the statutory law of the state, substantially as in the section above quoted, R. S. 1843, p. 590, § 8. The legislature seems to have adopted the adjudications of the Supreme Court upon this question, leaving the presumption of fraud open, to be rebutted by any evidence legitimate for that purpose; and this is made abundantly clear by the 21st section of the same act, which provides that "the question of fraudulent intent, in all cases arising under the provisions of this act, shall be deemed a question of fact," &c.

It is claimed by counsel for the appellant, that it does not appear but there was an actual delivery of the property, duly followed up by actual possession on the part of the plaintiff; or if there was no delivery, that the circumstances attending the case, and the situation of the parties, dispensed with the necessity of it; but we shall pass over these questions, and examine the case as to the fraudulent intent, starting out with the presumption, as the statute directs, that the transaction was fraudulent.

The bill of sale purports to vest the property absolutely in the plaintiff, in trust for the said *Lucy*, in consideration of an indebtedness from the said *Albert* to her; and if the bill stated the truth, no money should have passed, or been paid him for the bill of sale. In such a case, the passing of money, or making pretended payments, would look like a fraudulent device to cover up a dishonest transaction; because it would contradict what is expressed in the bill

May Term, 1858.

THE EVANS-
VILLE, &C.,
RAILR'D CO.
v.
SHEARER.

of sale itself, that it was in consideration of a previous indebtedness.

It appears that *Albert* was justly indebted to *Lucy*, in a sum between 1,800 and 2,500 dollars, for property disposed of by him as her trustee, the proceeds of which he had appropriated to his own use; and in his "failing circumstances" he was probably anxious to secure to her that indebtedness, as far as possible. This, we think, he had a legal right to do. A failing debtor may undoubtedly give a preference to one creditor or class of creditors, and a sale or assignment for such purpose is not treated as *mala fide*, but as merely doing what the law admits to be rightful. 1 Story's Equity Jurisprudence, § 370. We think the uncontradicted proof of this indebtedness, arising out of a flagrant breach of a trust reposed in him, followed up, as it was, by a bill of sale made in consideration of such indebtedness, removes the presumption of fraud that would otherwise attach to the transaction.

The evidence to repel the presumption of fraud in this case, we think is fully as strong, as in the case of *Sloan* v. *Kingore* and another, 3 Ind. R. 549, which fully sustains our decision.

*Per Curiam.* — The judgment is reversed with costs. Cause remanded for a new trial.

*W. Wallace* and *B. Harrison*, for the appellant.

*R. L. Walpole*, for the appellee.