# K.

KAHLYS. In re. See Cases Nos. 7,593 and 7,-594.

KABWRECK (SCHULENBERG v.). See Case No. 12,481.

## Case No. 7,593.

### In re KAHLEY.

[2 Biss. 383:[1] 4 N. B. R. 378 (Quarto, 124); 3 Chi. Leg. News, 85; 2 Leg. Gaz. 405.]

District Court, W. D. Wisconsin. Nov. 18, 1870.

CHATTEL MORTGAGE—RETAIL STOCK—POWER GIVEN MORTGAGOR TO SELL—SALE TO MORTGAGEE —SALE SET ASIDE—ELECTION BY CREDITORS.

1. A mortgage given by partners upon partnership property to secure an individual debt of one of the partners is valid. The rule preferring partnership property to the payment of partnership debts is for the benefit of the partners, and they may waive it. Such a mortgage is a waiver.

[Cited in Re Edwards (Mo. Sup.) 25 S. W. 905: Fisher v. Syfers, 109 Ind. 517, 10 N. E. 307; Purple v. Farrington, 119 Ind. 170, 21 N. E. 545.]

2. A mortgage upon a stock of goods, authorizing the mortgagor to sell and replace them in such manner as he may determine, and use the proceeds as he sees fit, is void as to such goods as the power of sale relates to.

[Cited in Robinson v. Elliott, 22 Wall. (89 U. S.) 526.]

3. If such power of sale is inserted in the mortgage, it is proved by the production of the mortgage, and the mortgage would be held void by the court. If not, it may be proved by parol, or inferred from circumstances and the conduct of the parties, and then it would become the duty of the court to instruct the jury that such power of sale by consent or understanding avoids the mortgage.

[Cited in Avery v. Hackley, 20 Wall. (87 U. S.) 411; Johnson v. Patterson, Case No. 7,403; Miller v. Jones, Id. 9,575; Re Foster, Id. 4,964.]

4. The creditors have their election to ratify the sale and collect any balance due, or avoid it, and take the goods.

5. The sale of a stock of goods with the fixtures to a creditor, he giving his notes for the balance above his claim, and being aware that their debts greatly exceeded their assets, is not made in the usual and ordinary course of business, and is void under the thirty-fifth section of the bankrupt act [of 1867 (14 Stat. 534)].

[Cited in Re Foster, Case No. 4,964.]

6. The title of the purchaser thus failing under the proceedings in bankruptcy, his purchase does not impair his rights as mortgagee, but he should be restored to his rights as such, as they existed at the time of his purchase.

7. A mortgage covering fixtures, a stock of goods on hand kept for sale, and all such as should afterwards be purchased and put into the store, may be valid as to the fixtures, but void as to the goods.

[Cited in Re Kirkbride. Case No. 7,839.]
[Cited in Hayes v. Westcott (Ala.) 8 South. 338. Cited contra in Wilson v. Voight

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

(Colo. Sup.) 13 Pac. 729. Cited in Rocheleau v. Boyle (Mont.) 28 Pac. 879.]

8. By virtue of sections 1 and 20 of the bankrupt act the court has the right to take possession of and sell mortgaged property, free from the lien without first satisfying it, but in such case the lien is transferred to the funds in court.

[Cited in Davis v. Anderson, Case No. 3,623; Sutherland v. Lake Superior Ship Canal, Railroad & Iron Co., Id. 13,643.]

9. This is a matter of discretion; and if the mortgaged property is of less value than the debt, or if of no marketable value, and there is no question as to the validity of the lien, it should be delivered to the creditor.

This was an involuntary petition in bankruptcy filed against Joseph Kahley and others, partners doing business in Janesville, Wisconsin. The proceedings were commenced on the 20th of October, 1870, and the customary warrant issued to take possession of the bankrupts' property. The marshal, on the 21st, seized by virtue of his warrant a stock of goods consisting of toys, candies and cigars, and the fixtures in the store or salesroom used for the business. The bankrupts had been for about a year previous thereto engaged in selling and dealing in that class of goods. In February, 1870, the bankrupts gave to Daniel G. Ilgen their notes, one for $475, which was for the balance of the purchase price of the interest of said Ilgen in said business sold to Kahley, and the other for $500, being for balance due to Ilgen from Manning for money put into the business for Manning; and to secure the notes they gave a chattel mortgage upon the stock of goods on hand, and such as might afterwards be purchased and put into the store, and also upon the fixtures. One note became due October 12, 1870, and was not paid. Ilgen then purchased the whole of the stock and fixtures at $600 over and above his mortgage, and gave them two notes of $300 each, one payable to each, and gave up his notes against them secured by his mortgage, and went into possession as such purchaser. At this time Ilgen knew that their debts greatly exceeded their assets. Ilgen, then, on these facts, applied to the court for an order that the property be restored to him.

Tenney, McClellan & Tenney, for creditors.
Conger & Sloan, for mortgagee.

HOPKINS, District Judge. A great many questions have been raised and discussed by the respective counsel on the argument. Those that I regard as decisive of the case I will proceed to dispose of. The creditors insist that the mortgage is void as against the partnership creditors, because the notes or the debts which it was in fact given to secure, were individual debts of the respective partners, and not properly a partnership demand.

I think the mortgage is good as against the partnership property. Kirby v. Schoonmaker, 3 Barb. Ch. 46. The rule that prefers partnership property to the payment of partnership debts is for the benefit of the partners, and they may waive it, which I think they did in this case, by giving their notes and mortgage upon the partnership property to secure them, notwithstanding the debts for which the notes were given were the individual debts of the bankrupts.

The sale of the property by the bankrupts to Ilgen on the 13th or 14th of October, was not made in the usual and ordinary course of business of the bankrupts, and is therefore prima facie evidence of fraud under section 35 of the bankrupt act. It may also have been fraudulent by the common law, and the fact that a jury so found, and the ready acquiescence of both parties in such finding, and their attempting to change their condition immediately thereafter, is very strong evidence that they understood that it was; and if I were to decide the case upon the evidence, as to the bona fides of that sale, I think I should have to hold it fraudulent and void as to the creditors, without reference to the bankrupt act. But as I consider it a sale out of the "ordinary course of business," and as Ilgen must have had good reason to believe that they were insolvent at the time, I think it is clearly void under the bankrupt act.

But notwithstanding the sale was void, and Ilgen not entitled to the property under it as against the creditors, still I think he has a right to assert his lien by virtue of his mortgage so far as that is valid. I do not think his purchase, which the creditors have a right to avoid, impairs his rights under his mortgage. But on the title failing that he supposed he got by the purchase, I think he would be restored to his rights as mortgagee, as they existed when he attempted to purchase. His title under the purchase he would lose, but nothing more.

The creditors would not be placed, by reason of the attempted purchase, in any better condition than they were before, nor he in any worse. It is like a case where usury is interposed to a note given in renewal of a valid, existing debt. If the new security is declared void for usury, the plaintiff's right to recover on the original indebtedness is revived. Eastman v. Porter, 14 Wis. 39; Meshke v. Van Doren, 16 Wis. 319, and cases there cited.

I now come to the consideration of the more important question—what property is bound by the Ilgen mortgage? It is certainly invalid as to the after-acquired property. Chynowith v. Tenney, 10 Wis. 397; Single v. Phelps, 20 Wis. 398; Gardner v. McEwen, 19 N. Y. 123. But it is claimed to be valid as to the fixtures, and as to such portions of the stock as remain, and can be identified as being on hand when it was given. There is no doubt but that it may be inoperative as to part, and binding as to the residue. Therefore, as to the fixtures which have not been

changed, I think it is good. But as to such portions of the stock as may not have been sold, and can be identified, I think, according to the weight of authority, it cannot be sustained.

The mortgage was upon a stock that was kept for sale, and unquestionably both parties expected that it would be sold. The mortgagors were engaged in selling that class of goods as a business. They bought them to sell, and intended and expected to sell them. So that I must presume that it was understood and expected by both parties that the mortgagors would sell the stock then on hand, and put in more from time to time as they might be able or wish to do, and as they in fact did. And which view is strengthened and made almost conclusive by the clause in the mortgage relating to after-acquired goods. That being the case, I think the mortgage of the whole stock that might be sold by the mortgagors is vitiated as to creditors.

The supreme court of Illinois, in Barnet v. Fergus, reported in 51 Ill. 352, have decided a mortgage under such circumstances to be void; in which decision I fully concur. If there had been a clause in the mortgage giving the mortgagors the right to sell the stock and use the money as they might choose, it would have rendered the mortgage void in law as to the whole stock. Place v. Langworthy, 13 Wis. 629; Gardner v. McEwen, 19 N. Y. 123; Collins v. Myers, 16 Ohio, 547; Jordan v. Turner, 3 Blackf. 309; Edgell v. Hart, 5 Seld. [9 N. Y.] 213.

To sustain a mortgage accompanied by such an agreement, consent or understanding, would allow a mortgagor to sell the mortgaged property as he saw fit, use the proceeds for his own benefit, exercise all the control and enjoy all the advantages of an absolute owner, in defiance of his creditors. A mortgage accompanied by such an agreement or consent is no protection to the mortgagee. Such an arrangement defeats its essential nature and quality as a mortgage, so that it cannot in a legal sense be called a security. It is nothing more than the expression of a confidence by the mortgagee in the mortgagor.

To permit a debtor to guard his property against his other creditors by such a mortgage, would enable him to hinder and delay them as long as he and his confidential mortgagee might see fit. I am fully satisfied that a mortgage upon a stock of goods which authorizes the mortgagor to sell them and replace with others at such times and in such manner as he may determine, and use the proceeds generally as he saw fit, is void as to such goods as the power of sale relates to.

Then the question arises, how may it be proven? If it is inserted in the mortgage, it is proven by the production of the mortgage; but if it is not, it may be proven by evidence aliunde. It is not necessary that it should be in writing or in the mortgage. It may be proven by parol, or inferred from circum-

stances and the conduct of the parties. It must of course be established by legal and competent evidence, and when thus established it is fatal to the security. If it appeared upon the face of the mortgage, it would be held void by the court; 13 Wis. 629, supra. But if not there, and it appeared by evidence aliunde, it would be the duty of the court to instruct the jury that such consent or understanding would avoid the mortgage.

And as I think the testimony shows that it was understood between Ilgen and the mortgagors that they might continue to keep possession of and sell the stock of goods after the mortgage was given, and use the proceeds at their discretion in buying other stock, the mortgage is void as to the whole stock, and only good as to the fixtures.

It appears that after Ilgen had been in possession a short time, and after his purchase had by a jury in a justice court been decided to be void as against creditors, they attempted to trade back. But such re-transfer was after the commencement of these proceedings, and when the marshal entered to take possession it was not wholly completed. Ilgen did not then claim to own the goods, but asserted his lien as mortgagee.

I think the creditors may, therefore, either ratify the sale, and collect of Ilgen the $600 he agreed to pay; or treat it as void, and take the goods. The goods were taken by the marshal, and afterwards delivered to a provisional assignee appointed at the request of the counsel of Ilgen.

The counsel of Ilgen on this motion argues with much earnestness that this court had no right to take possession of the mortgaged property after a default in payment, and sell it without first paying off the mortgage; particularly in this case, as he claimed the mortgagee was in possession when these proceedings were commenced.

Under sections 1 and 20 of the bankrupt act I have no doubt that this court has the right through its officers to take possession of and sell mortgaged property free from the lien of the mortgage, without first satisfying the lien. Houston v. Bank of New Orleans, 6 How. [47 U. S.] 486; Foster v. Ames [Case No. 4,965]; Ex parte Christy, 3 How. [44 U. S.] 308. In which case the lien is transferred to the fund in court. It is a matter of discretion with this court to sell subject to, or free from the lien or incumbrance.

But this discretion should be exercised with due care and regard for the interest of the secured creditor, as well as the general creditors. And if the property was of less value than the debt, or had no marketable value, and there was no question as to the validity of the lien, it should be delivered to the secured creditor instead of being sold. And in this case I should have ordered the fixtures delivered to Ilgen were it not that the creditors question the validity of his mortgage.

I understood the counsel of Ilgen to intimate that Ilgen would now take the property and pay the $600, and I understood the counsel for the creditors to say that if I should hold the mortgage as valid on the fixtures that the creditors would prefer to accept the $600 instead of the goods. I shall therefore deny this motion of Ilgen for the property.

And I shall order that if he pay into the registry of the court $600, and pay the fees and expenses of the provisional assignee within ten days, that the whole stock and fixtures be delivered to him; and shall order that Manning deposit in this court the note given him by Ilgen for $300 for his share of the stock.

I have charged Ilgen with the expenses of the provisional assignee, as he was appointed at his request. And if Ilgen does not comply with the above terms, the assignee shall then proceed to sell the goods and fixtures—selling them separately, and pay the proceeds into this court, stating the amount for which he sold each separately.

Consult In re Eldridge [Case No. 4,330] and Harvey v. Crane [Id. 6,178], and cases there referred to.

[NOTE. Upon an application by the bankrupt, Joseph Kahley, for his discharge, the court subsequently held that where the whole value of the bankrupt assets exceeded 50 per cent. of the debts proved, although the costs and expenses reduced the amount received by the creditors to less than 50 per cent., the bankrupt was entitled to his discharge without the assent of his creditors. Case No. 7,594.]