## KETCHUM AND OTHERS v. DURKEE AND OTHERS.

AFTER a dissolution of a partnership, and assignment by one partner to the other, one partner may file a bill for a settlement of the partnership concerns, and may unite in such a bill (except where a demurrer for multifariousness will lie,) an impeachment of a transfer of property. *Quere,* Whether by analogy to the case of bill for the distribution of assets, a creditor may not file such a bill without obtaining judgment.

At any rate creditors may be joined in such a bill.

Where one partner releases to another all the partnership effects and dues, in consideration of an assumption of the debts, he may still unite with creditors in preventing or redressing an improper application of the funds.

Where one partner brought all the stock into the firm, for which he was indebted to another person, and it was agreed that the appraised price of it should upon a dissolution be refunded with interest, the partner is not constituted a creditor, nor has he such a lien as authorizes him to transfer it to his creditor. He has a lien *inter se,* but not as against the creditors of the firm. *Ex parte Hunter,* 1 *Atk.* 225, has been repeatedly overruled. The question always is, whether the debt, which originally was separate, has been adopted as the debt of the firm. The mere fact of the goods coming to the use of the firm is not sufficient. Money borrowed on the mere security of one partner though applied to the use of the firm, is not enough, even if the other knew from whence it came. But if money is borrowed without

any separate contract, and so applied, it is *prima facie* evidence of a partnership debt.

*Held*, in the principal case, that upon the evidence there was no adoption of the separate debt as a partnership debt.

*Mr. Howes* and *Mr. Gibson*, for complainant.

*Mr. Paige*, for defendants.

THE ASSISTANT VICE-CHANCELLOR :—The bill seeks to have the partnership effects applied to the satisfaction of creditors, and as ancillary to that purpose, to have a confession of judgment given by one of the members to an alleged creditor set aside. It is filed by one partner in conjunction with creditors suing on behalf of themselves and all other creditors of the firm. The partnership has been dissolved.

The first formal objection taken to the frame of the record is not tenable. A partner has a right to file a bill for a settlement of the affairs of the firm, and a due application of the assets, and connected with that settlement, to impeach any disposition of the property, even after an absolute transfer by himself to his co-partner of the property charged with the debts. And perhaps creditors by analogy to the cases of bills for the administration of assets of a deceased person, may file such a bill without first getting judgment. The union with creditors is not an objection. Another objection has more weight.

The complainant, Jeremiah B. Ketchum, is a joint drawer of two notes, given confessedly on the purchase of goods for the use of the firm, and on which he is surety merely. These notes were not due when the bill was filed, but have since become due. I am inclined to think that the objection is not valid. But it is immaterial, as the other complainant the partner, and Davis an admitted creditor, are entitled to file this bill, and the only result would be, if the objection prevailed, to allow the name of Ketchum to be stricken out of the bill upon terms as to costs. I proceed to the merits.

The partnership between Robert C. Ketchum and the

defendant Durkee, was formed in the month of April, 1839, and was dissolved on the 2d of August, 1839. During its continuance, purchases were made of groceries and other articles, for the use of the firm, and a debt incurred to the complainant Davis, of about $1100, and to the estate of Bradley of about $800, with other debts. On the day of the dissolution, Ketchum executed to Durkee an assignment and release of all the partnership effects and dues, in consideration of the latter assuming the payment of the debts of the firm, and paying him the sum of $175 75. On the 13th day of September, 1839, Durkee confesses a judgment to his brother Eber O. Durkee, in the sum of $1530. An execution was sued out, and a levy made on the 20th of September. A sale was made of a part of the goods in the store, as will be more particularly noticed hereafter. An injunction arrested the sale of the residue. On the 19th day of September, 1839, Selah Durkee made an assignment of all his property to the defendants Meecher and Johnson, in trust to pay debts.

It appears to me that one point is perfectly clear. The operation of the assignment by Ketchum to Durkee, vested the latter with the entire control of the partnership assets, subject to the partnership debts. (*Ex parte Fell*, 10 *Vesey*, 348. *Bolton* v. *Puller*, 1 *Bos. & P.* 547. *Devau* v. *Fowler*, 2 *Paige*, 400.)

The important question cannot arise, as to his power to transfer the property in payment of preferred creditors, on the ground of want of assent of the co-partner. (*Hitchcock* v. *St. John*, *July*, 1840, *ante*, p. 511.) I consider that the only inquiry is, whether the debt to Eber O. Durkee was *bona fide*, and if so, whether it was a partnership debt.

Upon the former point there is no sufficient reason to doubt the actual contracting of the debt, and its being justly due. The latter involves the difficulty of the cause.

The loans by Eber to his brother commenced in April, 1838, and amounted, with the price of a quantity of sattinet sold him, to the sum of $1135 66, when the partnership was formed. The stock on hand was taken at a valuation of $975 cost price, and this sum was to be refunded

Selah, upon a dissolution, with interest on one half the amount. The stock had been purchased by means of the monies borrowed of Eber. Additions to the stock, or purchases to replace what had been used, were made during the partnership, and a small quantity of goods was bought after the dissolution. The amount of the latter as appeared by the bills, was about $300, and the under sheriff sold that portion for the sum of $151 51, which was applied to the execution. The residue of the goods was afterwards sold by the receiver for the sum of $626 67, and this residue was of course composed of the unsold portion of the original stock, and of the purchases from the complainants, or some of them, made during the firm. Durkee estimates the unsold portion of the old stock at about $300.

It may be thought that a natural equity arises, by which the fund in question ought to be distributed in the proportion of these proceeds, to the stock furnished by the defendant and the others respectively. But this is not the legal principle upon which the case must be decided. If the debt to Durkee was a partnership debt, he has got a legal advantage—if a separate debt, he has nothing to do with goods, the whole of which was partnership property.

Here an argument of the defendant's counsel requires examination. It is urged that the clause in the articles of co-partnership, that upon the dissolution Durkee is to be repaid his $975, the value of the stock brought in, constituted him a creditor of the firm for that amount; or entitled him to a lien upon the goods to that extent, and which he was authorized to transfer to any person, if done in good faith.

It is true that a partner has a lien upon the stock, not only for the amount of his share, but for monies advanced by him beyond his proportion for the use of the partnership. And this lien is not confined to the stock brought in, but extends to every thing coming in lieu thereof during the continuance, or after the termination of the partnership. ( *West* v. *Skipp*, 1 *Vesey*, 142. *Skipp* v. *Harwood*, 2 *Swanston*, 586. *Ex parte Ruffin*, 6 *Vesey*, 119.) These cases go no further than to establish such a lien

*inter se* and among representatives, or as against a separate creditor. The case, however, of *Ex parte Hunter*, (1 *Atk.* 225,) cited by counsel, went further. There, one of two partners borrowed money on his own security, and loaned the same to the firm. A joint commission was sued out, and the claim was made by the lender to come in and prove. Lord Hardwicke held, that the party could not come in directly. A man must be a creditor, by force of some contract express or implied; but none appeared of either nature in the case. Hunter only appeared to have lent the money to the partnership, and the petitioner did not seem to have had it in his thoughts. But he held, that by circuity he might prove the demand; that Hunter was a creditor upon the joint stock, and it followed that the creditors of his separate estate had a right to this in the first place. He was admitted to share in the partnership funds. I may notice, that upon the first argument Lord Hardwick's opinion was the other way. But it is sufficient to say that the decision has been repeatedly overruled. Mr. Cooke (1 *Bank's Laws*, 544,) cites three cases to this effect. In *Ex parte Burrel, January*, 1783, for example, there was a joint commission against two partners, and a separate one against one of them. The assignees under the latter petitioned to be admitted creditors' under the joint commission, for a sum of money brought by their bankrupt into the partnership beyond his share, and as being therefore a creditor of the partnership for that sum. But it was refused, on the principle that he cannot be a creditor in the partnership, in competition with the joint creditors. See also, *Ex parte Harris*, (2 *Vesey & Bea.* 212.) The remarks of Lord Cottingham upon the use of the terms debtor and creditor as between partners, are very instructive. (*Richardson* v. *The Bank of England*, 4 *My. & Craig*, 171.)

And Lord Thurlow finally determined the converse of the proposition upon the same principle. He held, that where one partner had taken more than his share out of the joint fund, the joint creditors could not be admitted to prove against his separate estate, until his separate cre-

ditors were satisfied, unless the funds were withdrawn fraudulently, to benefit separate creditors. (*Ex parte Grill*, and other cases, 1 *Cooke's B. L.* 547, overruling *Ex parte Blake, ibid.* 545.) This ground therefore, in my opinion, fails; and I shall proceed to the remaining question in the cause.

*1840.*

*Ketchum and others.*

*v.*

*Durkee and others.*

It is undeniable that the mere fact of the goods coming to the use of the firm, did not constitute E. Durkee a creditor of the firm. Money borrowed by one partner on his own security only, even during the existence of the partnership, although applied to partnership purposes, and even with the knowledge of the other partner, is not sufficient to make the lender a creditor. This was decided in *Bevan* v. *Lewis,* 1 *Simon's Rep.* 376.

In *Lloyd* v. *Freshfield,* 2 *Carr. & Payne,* 325, Lord C. J. Abbott, expressed himself thus strongly : " As to any "rule that if one partner borrow money on his separate " credit, he by apylying it to partnership purposes, thereby " makes the house liable—I wish to be distinctly under- " stood, that I do not subscribe to that doctrine."

In *Jaques* v. *Marquand,* 6 *Cowen,* 497, Justice Suther- land lays down the rule thus : Where one partner borrows money on his individual credit, and afterwards applies it to the payment of partnership debts, or loans it to the firm, it does not entitle the original lender to consider himself a creditor of the firm. Where one of a firm borrows money, the fact of its being used in the business of the partner- ship is *prima facie* evidence that the debt is joint, where no separate contract was made with the individual partner.

In *Ex parte Emly,* 1 *Rose,* 65, the doctrine was repeat- ed that it is not enough to prove that money borrowed by an individual goes into the partnership estate to make the partners liable.

In *Colt* v. *Wilder,* (1 *Edw. Rep.* 490,) the vice-chan- cellor came to the conclusion on the facts that on forming the partnership, there was an agreement that the debts of one partner, contracted in and about the purchase of the property which he brought in, should be considered as

debts payable by the partnership, or out of the joint pro-
perty.

In the case before me, the goods had been purchased,
and the debt contracted before the formation of the part-
nership; and there is not the slightest evidence of an
assent on the part of Ketchum to adopt it as the debt of
the firm. Indeed, there is no evidence of his knowing
that the goods had been bought by Eber Durkee's monies.
There is nothing but the very slight testimony of Selah,
that he told Ketchum he owed his brother money. The
case is, in my opinion, clearly against the defendant.

There must be a decree declaring that the fund in the
hands of the receivers belongs to the partnership creditors,
and that the defendant Eber Durkee has no right to any
part of it, and directing a reference for the master to call
in the creditors of the firm to prove their claims. And
that upon the confirmation of the report, the receiver pay
the complainant's costs out of the fund, and distribute the
balance rateably among such creditors according to the
report. The defendants must bear their own costs.