Filed Dec. 15, 1888.

---

No. 13,766.

WINSLOW ET AL. *v.* WALLACE, RECEIVER.

PARTNERSHIP.—*Firm Note.—Endorsement by Individual Partners.*—A creditor who holds a note made by a firm and endorsed by the individual partners, has a valid joint obligation against the firm and at the same time a distinct, several and separate obligation against those who have signed as endorsers.

SAME.—*Individual Property.—Conveyance to Firm to Secure Debt.*—A conveyance of separate property, executed in good faith by a partner to secure a debt owing by him to the firm of which he is a member, is valid as against the individual creditors of the partner.

SAME.—*Appointment of Receiver.—Operates as Assignment.*—The appointment of a receiver for an insolvent firm operates to all intents and purposes as an assignment of the firm assets, with all the securities incident thereto, for the benefit of the firm creditors.

SAME.—*Individual Property Conveyed to Firm.—Administration by Receiver.*— Where individual partners, being indebted to the firm, convey thereto their separate property, either as payment or as security for the payment of their *bona fide* debts, such property, upon the subsequent insolvency of the firm and the appointment of a receiver, vests in the receiver for the benefit of the creditors of the firm.

SAME.—*Promissory Note.—Endorsement.—Preference of Creditor.*—A creditor who loans money to a firm upon promissory notes executed by the firm

and endorsed by the individual partners, without knowledge that such partners had previously conveyed to the firm their separate property to secure their debts due to the firm, is not, upon the subsequent appointment of a receiver for the firm, entitled, as an individual creditor, to payment out of the separate property so conveyed, in preference to the creditors of the firm.

From the Marion Superior Court.

*F. Winter*, *A. Baker* and *E. Daniels*, for appellants.

*B. Harrison*, *W. H. H. Miller* and *J. B. Elam*, for appellee.

MITCHELL, J.—Prior to the 15th day of July, 1884, Stoughton A. Fletcher, Thomas H. Sharpe, Ingram Fletcher and Albert E. Fletcher were partners, carrying on a general banking business in the city of Indianapolis, under the firm name of Fletcher & Sharpe. The firm became insolvent, and upon the application of one of the partners, William Wallace, Esq., was, on the date above mentioned, duly appointed by the superior court of Marion county to take charge of the assets of the firm, as receiver.

During the pendency of the receivership, Winslow, Lanier & Co., bankers of the city of New York, filed an intervening petition, in which they represented that the firm of Fletcher & Sharpe was indebted to them in a large amount, which indebtedness was evidenced by two promissory notes, executed by the firm, and secured by the separate endorsement of three of the partners individually. The intervenors asserted the right to participate ratably in the assets of the firm, and also to be preferentially paid any balance of their claim remaining unpaid, out of the proceeds of certain individual property which they averred those members of the firm who had become liable as endorsers had transferred to a trustee for the benefit of the firm prior to the declaration of insolvency, and which, it was alleged, had since been transferred to the receiver.

There was a hearing upon issue taken, and upon due request the court found the facts specially, and stated conclu-

sions of law thereon adverse to the claim of the intervenors for a preference.

The only facts specially found material to the determination of the questions involved are, in substance, that, on the 21st day of January, 1884, the persons above named, having carried on the banking business as partners, under the firm name of Fletcher & Sharpe, for the period of ten years or more, entered into a new partnership agreement, at which time, as subsequent events proved, the firm, as well as the individual members thereof, although owning a large amount of property, were of doubtful solvency, if they were not, indeed, actually insolvent. Two of the partners, viz., Ingram and Albert E. Fletcher, were each largely indebted to the firm, the debt of the first named being $448,286, while that of the last named amounted to $300,000, or thereabouts. Each of the above named partners owned a large amount of individual property, which they, as well as the other members of the firm, believed would sell for more than sufficient to pay the amounts due from them respectively to the firm. It was accordingly stipulated, as part of the new agreement, that Ingram and Albert E. Fletcher should severally convey and transfer all their individual property, real and personal, to a trustee in trust, to be sold and converted into money by the firm, and the proceeds applied to the liquidation of their respective debts due the firm, and the residue, if any, placed to the credit of each as capital stock. It was also agreed that Thomas H. Sharpe, one of the partners, should convey the undivided one-half of a certain bank building, owned by himself and the two Fletchers above named as tenants in common, to the firm, subject to an encumbrance which, it was stipulated, the firm should pay.

In pursuance of the agreement above mentioned, and upon the considerations therein named, and no other, the several partners, their respective wives joining, made conveyances of their individual real estate according to the terms of the new agreement, the conveyance by Sharpe having been made

to the firm on the 23d day of January, 1884, while the deeds from the Fletchers to the trustee were executed on the 2d day of February, 1884. The trustee subsequently conveyed the Fletcher property to the receiver. The value of the property conveyed by Ingram and Albert E. Fletcher did not, in either case, equal the amount due from them respectively to the firm.

The court finds that the conveyances were made in good faith, in order to provide for the payment of debts actually due the copartnership from the several partners, and to enable the firm to pay its debts and carry on its business. Afterwards, in April and June, 1884, Fletcher & Sharpe made two notes, one for $25,000, the other for $20,000, both payable to the firm of Fletcher & Sharpe. These notes were endorsed by the firm, whose endorsement was followed, in regular course, by that of Thomas H. Sharpe, Ingram Fletcher and Albert E. Fletcher. Upon the notes so endorsed the intervenors, Winslow, Lanier & Co., loaned to the firm of Fletcher & Sharpe the amount of money specified in each note respectively.

The intervenors did not know of the conveyances above mentioned made by the several partners to the firm of Fletcher & Sharpe, at the time of making the loan, the endorsement of the partners having been accepted in order to obtain the security of their personal liability on the notes. No inquiry was made by Winslow, Lanier & Co. concerning the individual property of the several members of the firm of Fletcher & Sharpe, nor was there any representations made by any member of the latter firm in that regard.

Subsequently a receiver was appointed by the Marion Superior Court, who took possession of all the property and assets of the firm, including the property conveyed to the firm and to the receiver as above mentioned in pursuance of the partnership agreement made on the 21st day of January, 1884.

The question is, whether or not upon the foregoing facts

the intervenors were entitled to priority of payment over other firm creditors out of the property conveyed to the firm by the several partners?

There seems to be no dispute, as indeed there could not well be, upon the proposition that a creditor who holds a note of which a firm are the makers, and one or more members thereof endorsers, has in his hands a valid joint obligation against the firm, and at the same time a distinct, several and separate obligation against those who have signed as endorsers. This result flows from the fact that the contract of an endorser is entirely independent of and distinct from that of the maker, each contract being in itself, when the endorsement is in regular course, conclusive in its legal import. The creditor holding a note so made and endorsed, may, therefore, pursue his remedy against the partners as makers, and he may also proceed against those individually liable as endorsers. When the property of the firm, or the individual estates of the members bound as endorsers, are being judicially administered, the creditor is entitled to participate with the partnership creditors in the joint estate, and he may at the same time avail himself of any appropriate remedy he would otherwise have against the endorsers or their respective estates. He may receive dividends from the joint estate as a partnership creditor, and from the separate estate of the partners liable on their contract of endorsement as an individual creditor. *Wilder* v. *Keeler,* 3 Paige, 167, 176; *Mead* v. *Nat'l Bank,* 6 Blatch. 180; *Emery* v. *Canal Nat'l Bank,* 3 Cliff. 507; *In re Bradley,* 2 Biss. 515; *In re Babcock,* 3 Story, 393.

This is upon the principle that one who holds two independent obligations as security for a debt, is entitled to avail himself of both, until the debt is once completely satisfied.

Having established the right of a creditor who holds the note of a firm, endorsed by some or all of its members, to participate in the joint estate of the partners to the exclusion

of individual creditors, as well as in the separate estate of the endorsers to the exclusion of partnership creditors, and resting their ultimate right for preference on this proposition, counsel for the intervenors plausibly contend that, since the conveyances of their individual property made by the several members of the firm of Fletcher & Sharpe, in pursuance of the new partnership agreement, were intended merely as security for debts due from those members to the firm, such conveyances, although absolute in form, constituted in fact only mortgages. Therefore it is said the property thus conveyed remained the individual property of the several members, subject only to a mortgage in favor of the firm, notwithstanding the conveyances. Hence, the argument proceeds, the rights of the partnership creditors having become fixed and vested in the partnership property by the appointment of a receiver, the correlative rights of the individual creditors in the individual property, being compensatory, must have become fixed and vested in the individual property of the several members at the same time. The conclusion is said to follow, since the intervenors, who occupy the double character of individual and partnership creditors, have thus obtained a vested right in, or lien upon, the individual as well as the partnership property, that neither the insolvent firm of Fletcher & Sharpe, nor the receiver, will be heard to assert the prior mortgage in favor of the firm upon the separate property of the individual members as against the subsequent lien of the intervenors, who are also creditors of the firm. The joint creditors, represented by the receiver, it is said, have no rights except such as they derive by subrogation from Fletcher & Sharpe, and since the latter could not have come into competition with the intervenors, their own creditors, in obtaining payment out of the individual property conveyed as above, their joint creditors can not do so.

It is undoubtedly true that a debtor will not be permitted to avail himself of a prior security if to do so would defeat

the collection of a debt which he is legally or equitably bound to pay.

Where property is encumbered as security for the payment of two debts, if the holder of the first lien is under a duty ultimately to pay the debt secured by the second, it would be manifestly inequitable to permit him, in case the property was insufficient to pay both, to set up the prior lien to the discomfiture of his own creditor. Thus, if a partner borrow money on his individual security or credit, although for the use of the firm of which he is a member, while he might have a partner's lien, *inter sese,* he has none against the firm creditors, because he himself owes the joint debts due the creditors of the firm. 2 Lindley Partnership, 683; *Ketchum* v. *Durkee,* 1 Hoff. Ch. 538.

Upon like principles, the assignee of the last of a series of notes secured by mortgage is entitled to preference over the mortgagee, who retains a prior note, in case the latter became liable for the payment of the last note by his contract of endorsement. *Wilber* v. *Buchanan,* 85 Ind. 42; 2 Jones Mort., section 1701.

The facts found by the court, however, do not make the present a case for the application of the principles above stated.

Without conceding that the conveyances of their separate property by the individual members of the firm of Fletcher & Sharpe, in pursuance of the agreement above referred to, constituted mortgages merely, and dissenting entirely from the view that the appointment of a receiver of the assets of the firm in any way affected the relation of the individual creditors to the separate property of the several members, so as to give those creditors a vested right in, or lien upon, the separate property of the partners, yet, if these points were conceded to the intervenors, we are unable to see how it would aid their purpose, unless the conveyances referred to were invalid, and of no effect as against individual creditors. Whether the deeds operated as absolute conveyances, or as

mortgages, there is no question but that they were executed some months prior to the appointment of the receiver, and before the intervenors became creditors, either of the firm of Fletcher & Sharpe, or of any of its individual members. Nor is there any dispute but that the conveyances were made either to pay or secure actual subsisting debts due from the owners of the property respectively to the copartnership.

The property having been transferred to secure the payment of *bona fide* debts due the firm, long before the receiver was appointed, as soon as a receiver was appointed it vested in him for the benefit of the creditors of the firm. The effect of the conveyances very clearly was to convert that which was theretofore individual property into property belonging to the firm.

Debts due from the individual members of a partnership, like other debts due the firm, become assets in the hands of a receiver, who stands in some respects as an assignee of the firm property, and are to be collected and applied to the payment of firm debts accordingly. If such debts are secured by mortgage, granting that the conveyances in question constituted mortgages only, or otherwise, the security, like the debt, stands for the benefit of the firm creditors, unless the security was taken in violation of the rights of individual creditors. The inquiry then ultimately comes to this : Is a conveyance of separate property, executed in good faith by a partner to secure a debt owing by him to the firm of which he is a member, valid as against the individual creditors of the partner? Upon principle and authority this question must be answered in the affirmative.

It is settled everywhere, that where the assets of a partnership, or the individual property of the members of a firm, are brought under the jurisdiction of a court for judicial administration, the equitable rule of distribution will be applied, and the partnership assets will be devoted first to the payment of the firm debts, and the individual property of the several partners to their individual debts respectively.

But where the partnership assets remain under the control of the partners, they have the power to appropriate any portion of it to pay or secure the individual debts of the members of the firm. Thus, in *Fisher* v. *Syfers,* 109 Ind. 514, this court said:

" Where debts are fairly owing by either partner individually, the mere preference of individual over partnership creditors by the execution of a chattel mortgage, in the firm name, or by authority of the partners, upon the property of the firm, is not of itself such a fraud upon the partnership creditors as will authorize the setting aside of the chattel mortgage at the suit of a creditor. *Nat'l Bank, etc.,* v. *Sprague,* 20 N. J. Eq. 13 ; *Kirby* v. *Schoonmaker,* 3 Barb. Ch. 46 ; *Kennedy* v. *Nat'l Union Bank,* 23 Hun, 494; Jones Chat. Mort., section 44 ; *In re Kahley,* 2 Biss. 383."

So in the same decision it is said:

" The rule that obtains in the distribution of the estates of partners, and under which partnership creditors are entitled to priority of payment out of the partnership assets, is an equitable doctrine for the benefit and protection of the partners respectively. ' Partnership creditors have no lien upon partnership property ; their right to priority of payment out of the firm assets, over the individual creditors, is always worked out through the liens of the partners.' *Warren* v. *Farmer,* 100 Ind. 593 ; *Trentman* v. *Swartzell,* 85 Ind. 443. Upon the death of one partner, or where the firm becomes bankrupt, or where the partnership assets are being administered by a court, the rule of equitable distribution is applicable to its fullest extent. Where, however, the partners have the possession and control of their own property, they have the right to make any honest disposition of it they see fit ; each has the right to waive his equitable lien, and together they may sell, assign or mortgage the property of the firm, to pay or secure either an individual debt of one of the partners, or the debts of the firm."

The equity of the creditors is a derivative one, and arises out of the principles of subrogation, entitling them to enforce the equities subsisting between the partners, so long as the right of any of the partners has not been waived. But the partners may waive their rights either in the partnership property or in that owned by them individually. *Dunham* v. *Hanna*, 18 Ind. 270; *Case* v. *Beauregard*, 99 U. S. 119, and cases cited.

It being thus settled that partners, while they remain in the possession and control of partnership property, and before it is brought under the jurisdiction of a court for administration, may create liens upon the property, or appropriate it to pay or secure the individual debts of the partners, the correlative right of an individual partner to deal in like manner with his own separate property, and appropriate it to pay or secure his own debt to the firm or a debt owing by the firm to a third person, would seem to follow as a matter of course. Thus, in *Jackson* v. *Cornell*, 1 Sandf. Ch. 348, speaking of a general assignment by an insolvent partner, in which the assignor gave preference to certain creditors of the firm to the exclusion of his own, the Vice-Chancellor said : " Let the partner actually apply his own property as he thinks proper, while he administers it himself. But when he avails himself of the lenient provisions of our law, which enable him to prefer such creditors as he pleases, on making an assignment, and to select his own trustee, let us require him to avoid violating the plainest principles of equity."

This decision, while holding that a court of equity will neither tolerate nor administer a general assignment by a partner of his separate property, in which he prefers partnership over individual creditors, nevertheless fully recognizes the right of a partner to "apply his own property as he thinks proper, while he administers it himself."

The limitation upon the power of partners, or of individuals, to deal with or dispose of partnership or individual property, while it remains in the possession and under the

dominion of the owners, must in either case be that the disposition or appropriation be honestly made, without any fraudulent intent to divert the property from the payment of their *bona fide* debts, as to injure their creditors, and with no purpose to reserve some benefit to themselves personally by the arrangement. That the disposition results in the payment of one *bona fide* debt to the exclusion of another creditor, whose demand is equally meritorious, is of no consequence. *Gilbert* v. *McCorkle*, 110 Ind. 215; *Bedell* v. *Chase*, 34 N. Y. 386; *Gregory* v. *Harrington*, 33 Vt. 241; *Covanhovan* v. *Hart*, 21 Pa. St. 495; *Smith* v. *Selz*, 114 Ind. 229.

Whatever a partner may do with his individual property, in respect to paying or securing debts of the firm, it can not be doubted that he has the right, as was done in the present case, to appropriate it to the payment or securing of his own debt to the firm of which he is a member.

We are thus led to the conclusion that the conveyances by the individual members of their separate property to the firm of Fletcher & Sharpe, whether those conveyances be regarded as having been made in payment of, or as security for, debts due the firm, or whether they be considered as advancements made by the several partners to the capital stock of the firm, were valid and effectual as against individual creditors, to transfer a vested interest in the property thus conveyed to the firm as of the date on which the conveyances were executed.

Having seen that the conveyances in question were executed while the several partners were in control of and administering their own property, long before the assets of the firm came under judicial administration, and that the conveyances constitute valid transfers of the property therein described to the firm, it results that the individual property, out of which the intervenors claim the right to be preferentially paid, was legitimately part of the assets of the firm of Fletcher & Sharpe when the receiver was appointed.

The appointment of a receiver, the firm being insolvent,

operated to all intents and purposes as an assignment of the firm assets, with all the securities incident thereto, for the benefit of the firm creditors. This being so, there is no principle of law or equity upon which it can now be said that the firm creditors shall be estopped to avail themselves of the benefit of property which the firm had the right to acquire, and which it had acquired, whether in payment or as security is immaterial, upon an adequate consideration paid.

Whether, in case the controversy were between the intervenors and Fletcher & Sharpe, the latter would be estopped to assert their prior right to the property in question, we do not now decide.

Fletcher & Sharpe having become insolvent, and having in effect assigned their partnership effects for the benefit of their creditors, the receiver, representing an equal equity, and having the legal title in dispute, can not be postponed to the claims of an individual creditor. Where the equities are equal, he is in the situation of advantage who holds the prior legal right.

It is only necessary to say in conclusion that we have fully considered what has been said in relation to the fraudulent character of the conveyances referred to, as to future creditors, and without stating our reasons at large, our conclusion is, that it does not appear, either in the facts found or in the evidence, that the contention of the intervenors in that respect is maintained. The conveyances seem to have been made in good faith for the benefit of the firm creditors, without any reservation or advantage to the grantors.

The judgment is therefore affirmed, with costs.

Filed Sept. 21, 1888; petition for a rehearing overruled Dec. 14, 1888.