Warford *v.* Sullivan *et al.*

## WARFORD *v.* SULLIVAN ET AL.

[No. 18,104.   Filed February 5, 1897.]

LIENS.—*Holder not Made Party to a Foreclosure Suit.*—Parties who acquire liens pending suit to foreclose are as much bound by the decree as if made parties thereto.   *p. 18.*

SAME.—*Redemption by Holder of Lien Secured by Lien on Other Real Estate of Judgment Debtor.*—The right of a judgment creditor to redeem lands from a judicial sale is not affected by reason of such judgment being a. lien also on other lands of the judgment debtor. *pp. 18, 19.*

JUDICIAL SALES.— *Redemption by Junior Lien Holders.* — Where a judgment creditor redeems real estate from a sheriff's sale, under a foreclosure sale of a mortgage, senior to his lien, a holder of a junior unforeclosed mortgage cannot, after the year of redemption has expired, treat the foreclosure sale on such first mortgage as having been vacated, and, by foreclosing his mortgage, cut the redemptioner entirely out, unless the land is worth enough to pay all the liens, although the redemptioner's lien is junior to such second mortgage.   *p. 19.*

SAME.—*Successive Redemptions.—Statute Construed.*—Under section 784, Burns' R. S. 1894 (772, R. S. 1881), providing the manner in which redemptions and successive redemptions are effected by judgment lien holders, a junior judgment lien holder acquires no advantage over a senior judgment lien holder in being first to redeem from a judicial sale as the subsequent redemptioner, whose judgment is senior to that of the preceding redemptioner, does not have to pay such junior judgment in order to redeem, but is required only to pay the preceding redemptioner the amount he paid to redeem, and interest.   *p. 21.*

SAME.—*Redemption.—Failure of Senior Lien Holder to Redeem from Junior Redemptioner.*—Where real estate is redeemed from a judicial sale by the holder of a junior lien, a party who holds a lien senior to such redemptioner loses his lien on the land if he fails to redeem from such junior redemptioner within the year of redemption from original sale.   *pp. 21, 22.*

SAME.—*Distribution of Surplus Arising from Sale of Real Estate by Redemptioner on a Venditioni Exponas.—Statute Construed.*—Section 785, Burns' R. S. 1894 (773, R. S. 1881), providing the manner of distribution of surplus arising from sale of real estate by a redemptioner from a judicial sale on a *venditioni exponas* after satisfaction of the execution, is not confined to cases where the redemp-

tioner's judgment was stayed, or payable in installments, but applies to all sales made by a redemptioner on a *venditioni exponas*. pp. 22–24.

SAME.—*Redemption by Mortgagee.—Statute Construed.*—Section 786, Burns' R. S. 1894 (774, R. S. 1881), providing the manner of redemption from judicial sales by lienholders other than by judgment includes mortgagees, and a mortgagee is entitled to share with the judgment creditors in the distribution of any surplus arising from a redemptioner's sale according to the original priorities and equities. pp. 24–26.

STATUTORY CONSTRUCTION.—*Judicial Sales.—Redemption.*—The act of 1881 covers the entire subject-matter of redemption from judicial sales, and governs all sales made subsequent to its enactment, and repeals the former statute. p. 27.

From the Posey Circuit Court. *Affirmed.*

*Gilchrist & DeBruler*, for appellant.

*Garvin & Cunningham*, for appellees.

McCABE, J.—The appellant sued the appellees to foreclose a mortgage executed to the appellee, Huston, to indemnify him as surety on two promissory notes of $5,000.00 each, executed to appellant by appellee, Sullivan and wife, and Mackey as principals, and said Huston as surety, containing also a covenant to pay said notes to appellant, Warford.

The only controversy in this case on this appeal is between the appellant and one of the appellees, the First National Bank of Evansville, Indiana, over that part of the decree rendered upon the cross-complaint filed by said bank.

That cross-complaint sought and obtained a decree declaring said bank the holder of a superior lien to that of the appellant by reason of said bank having become a redemptioner of 400 acres of the land embraced in the appellant's mortgage.

The errors assigned call in question the action of the trial court in overruling appellant's motion for a new trial of the issues between said bank and appel-

lant, in decreeing that the lien of the judgment of said bank was prior and superior to the lien of the appellant's mortgage on the real estate described in the decree, and in decreeing a sale of said real estate on a *venditioni exponas* by said appellee, and directing that from such sale said appellee should be first paid before appellant should receive anything on said mortgage, and questioning the sufficiency of the facts stated in the cross-complaint of said appellee bank.

The first and last assignment present the same question. There is no question made that the facts stated in the cross-complaint were not proven. If the cross-complaint stated facts sufficient, such facts having been proven, the motion for a new trial was properly overruled and the proper decree was rendered.

The controversy then is simply a question of law. That question depends upon the proper construction of the statute of redemptions of 1881. The facts disclosed by the cross-complaint and evidence are, that on January 6, 1887, the owners of the land in controversy, situate in Posey county, to-wit: Edward T. Sullivan, Margaret R. Sullivan, his wife, and David J. Mackey, and Carrie S. Mackey, his wife, executed a mortgage to the Equitable Trust Company on a part of the land described in the complaint; that said mortgage was given for the unpaid balance of the purchase money of said land, which had on said day been conveyed by said company to said Margaret R. Sullivan and David J. Mackey; that afterwards, the mortgage debt falling due on November 2, 1893, said company brought suit in the Posey Circuit Court against the mortgagors for the foreclosure thereof, and on November 20, 1893, recovered judgment and decree in said court foreclosing said mortgage in the sum of $2,847.40; that said land was, on proper process, duly

sold by the sheriff of said county, on said decree, to Parke & Welborn for $3,054.23, to whom said sheriff issued a certificate of purchase in due form; that on December 8, 1894, one Nettleton recovered judgment in the same court against said Sullivans and David J. Mackey for $4,369.46, and on the same day the appellee, said First National Bank, recovered a judgment in the same court against the same defendants for $10,722.50, both of which became liens on said real estate, junior to the first mortgage and decree mentioned; that afterwards said Nettleton duly assigned her judgment to one Reitz, and afterwards he duly assigned it to said First National Bank; that afterwards, on July 19, 1895, said First National Bank still being the owner and holder of said two judgments, and claiming the right to redeem from said foreclosure sale as a judgment creditor by virtue of said two judgments, filed in the office of the clerk of the Posey Circuit Court an affidavit for the purpose of enabling it to make said redemption; that thereupon said bank paid to the clerk of said court $3,296.00, being the purchase money paid by said Parke & Welborn at said sheriff's sale, with interest thereon at eight per cent. per annum from date of sale; that the aforesaid certificate of purchase was duly assigned by said Parke & Welborn to the Peoples Savings Bank, and the same was afterwards duly assigned to said Huston by said savings bank, and by said Huston the same was assigned to one Gumberts; that said Huston furnished the money for the purchase of the said certificate, and that all of said transfers were for his benefit; that said Gumberts, being the holder of said certificate, and at the instance and by the direction of said Huston accepted said redemption money; that no other redemption of said real estate

was ever made, either by the owners or any one else; that the mortgage described in the complaint was executed after the suit by the Equitable Trust Company was commenced, and was not recorded until after the judgment and decree of foreclosure had been rendered.

The learned counsel for appellant say that the precise question involved in his appeal is this: "If A takes a mortgage on real estate on which there is a prior mortgage which is foreclosed after the date of A's mortgage, but before it is recorded, in a suit to which A is not a party, and if afterwards the land is sold by the sheriff under the foreclosure, can a junior judgment creditor, whose judgments are liens, not only on the mortgaged premises, but on other lands of the judgment debtor, by paying the clerk, without the knowledge of A, the amount bid at the sheriff's sale, effect a redemption of the property which will displace the lien of A's mortgage and give priority over that lien to the junior judgment by virtue of which the redemption was made? Incidentally there is involved the question whether the affidavit filed by the appellees for the purpose of redeeming the property was sufficient."

This being the precise question counsel present, they contending for the negative thereof, it will be useful to eliminate conditions or contingencies therefrom that are wholly immaterial. For instance, that A was not a party to the foreclosure suit. Parties who acquire liens pending suit to foreclose are as much bound by the decree as if made parties thereto. *Boice* v. *Michigan, etc., Ins. Co.,* 114 Ind. 480; *Randall* v. *Lower,* 98 Ind. 255; *Winslow* v. *Wallace, Rec.,* 116 Ind. 317.

Nor does it make any difference under the redemption law that the junior judgment is also a lien on

other lands of the judgment debtor. Nor is the precise question involved in this appeal, as the learned counsel supposes, whether a redemption of real estate by a junior judgment creditor will displace a lien of an unforeclosed mortgage and give priority over that lien to the junior judgment by virtue of which the redemption was made. But, rather, the question presented is, can the holder of a junior unforeclosed mortgage, by lying still and permitting a judgment creditor, whose lien is not only junior to the oldest mortgage, but junior also to his own, redeem from a sale on the oldest mortgage, which is also the oldest lien, and then step in and get the benefit of such redemption, and treat the foreclosure sale on said first mortgage as having been vacated for his benefit by such redemption, and then foreclose his mortgage and cut the redemptioner entirely out, unless the land is worth enough to pay all the liens? That is, the appellant, while loudly complaining of the displacement of the lien of his mortgage, is proposing to displace the lien, force and effect of a foreclosure decree and sale on a senior mortgage, even after the year allowed for redemption therefrom has expired. We need hardly say that the redemption law does not permit any such injustice.

The third section of the redemption act of 1881 provides that the owner may redeem real estate sold at sheriff's sale, within one year after the sale. Section 780, Burns' R. S. 1894 (768, R. S. 1881).

The fifth section of said act, section 782, Burns' R. S. 1894 (770, R. S. 1881), provides that, when the owner redeems from a sheriff's sale, the same shall be wholly vacated and the real estate made subject to sale on execution again as if such sale had not been made. And it further provides that no resale of real estate already sold at sheriff's sale shall be had upon execu-

tion, or decretal order upon any judgment or decree junior in lien to that on which the sale was made within one year from the date of such sale, unless the same shall have been previously redeemed by the owner or part owner, or some one claiming under either.

In all the other sections of the redemption act of 1881 there is no provision made for a resale or another sale of the land by either a junior judgment lien holder, junior mortgagee, or other junior lien holder, without a redemption by the lien holder at whose instance the resale is authorized to be had. Nor is there any provision therein that any other redemption than that by the owner or part owner shall have the effect to wholly vacate the sale and subject the real estate to sale on execution again, as if such sale had not been made.

But appellant's contention would require all these absent provisions to be interpolated into the redemption statute to the complete overthrow of the system of redemption provided for.

The next section provides that in the absence of a redemption by the owner or part owner that the real estate so sold may be redeemed at any time within one year from the date of sale by any judgment lien holder, his executors, administrators, or assigns, which at the time he or they offer to redeem shall be a lien on such real estate junior to the judgment on which the same was sold. And such redemption may be made by any person entitled thereto without regard to the order of priorities of liens. Section 783, Burns' R. S. 1894 (771, R. S. 1881).

The next section provides the manner in which redemptions and successive redemptions are effected by judgment lien holders, among which are that each applicant to redeem shall file with the clerk of the proper court an affidavit setting forth the facts en-

titling him to redeem. That he shall then pay to such clerk for the use of such purchaser the amount paid by him for the real estate, and interest at the rate of eight per cent. per annum thereon from the date of his purchase. When such redemption has been made, any other judgment creditor entitled thereto may redeem by filing a similar affidavit. That he shall thereupon pay to such clerk for the use of the last preceding redemptioner, if the lien of the latter be junior to that of the party now redeeming, his redemption money and interest at the rate of eight per cent. per annum and his costs of redemption; or if his lien be senior to that of the party seeking to redeem he shall pay to the clerk, for the use aforesaid, the judgment of the last redemptioner on account of which his redemption was made and interest thereon and his costs of suit in addition to the amounts aforesaid. Section 784, Burns' R. S. 1894 (772, R. S. 1881).

It will be observed that under this last provision a junior judgment lien holder in being first to redeem acquires no advantage over a senior judgment lien holder, who comes forward at any time afterwards and within the year allowed for redemption, and asserts his right to redeem and complies with the statute. Such subsequent redemptioner, whose judgment is senior to that of the preceding redemptioner, does not have to pay such junior judgment in order to redeem, but is required only to pay the preceding redemptioner the amount he paid to redeem, and interest.

But such senior judgment lien holder, if he does not see fit to assert his right to redeem, and that, too, within the year, must lose his lien on the land. The lien is not displaced by anybody, but is lost by the neglect of the holder thereof to comply with the terms of the redemption law to make it effectual, precisely as his lien would have been lost if no redemption had

ever been made of the real estate from the original sale on a lien that was older than his judgment. The appellant objects to the validity of the alleged redemption on the ground that the affidavit filed by the First National Bank, claiming to set forth the facts entitling it to redeem, is insufficient. But it is shown that the owner of the certificate of purchase accepted the redemption money. He being the only person that had the right to object to the sufficiency of the affidavit, he has waived the same by accepting the redemption money. *Ringle* v. *The First Nat. Bank,* 107 Ind. 425; *Taggart* v. *McKinsey,* 85 Ind. 392; *Carver* v. *Howard,* 92 Ind. 173; *Hervey* v. *Krost,* 116 Ind. 268.

The next section, among other things, provides that, if during the year allowed for redemption, the real estate or interest therein sold by the sheriff shall be redeemed by any judgment creditor, and remain unredeemed by the owner at the expiration of such year, the last redemptioner shall be immediately entitled to sue out an execution in the nature of a *venditioni exponas* upon his judgment by virtue of which he made his redemption. Then the section specifies the various facts that shall be recited in such execution, and that it shall command the sheriff to sell the real estate so redeemed to the highest bidder; and after paying the costs of sale, and paying to such redemptioner his redemption money, and interest thereon at the rate of eight per cent. per annum and his costs of redemption, and the amount of principal, interest and costs due on his judgment, pay the residue into the office of the clerk issuing such execution, such sale to be upon like notice as in other cases, but without offering the rents and profits, and without regard to appraisement laws, and the sheriff shall, upon perfecting such sale, execute to the purchaser a conveyance of the premises, which shall convey to the

purchaser all the title and interest of the owner sold under the original execution. If execution upon the judgment of the last redemptioner be stayed at the expiration of the year aforesaid, or there be installments on his judgment or decree not then due, he shall nevertheless be entitled to execution as aforesaid for the amount due on account of his redemption, which shall be without prejudice to sue out further final process on his judgment or decree; and any surplus. remaining, after satisfying the costs of sale and amount due him on account of redemption, shall be paid to the clerk for distribution, as hereinafter provided. Such sale shall discharge the lien of the judgment on which the original sale was made, and the liens of all intervening judgments and decrees; and if any surplus remain after satisfying the execution upon the last sale, it shall be distributed by the court from whence said execution issued, among the judgment creditors whose liens are junior to that under which the original sale was made, according to their original priorities and equities.

Appellant's learned counsel contend that the manner of distribution of a surplus after satisfying the execution applies only to such cases of sales made by a redemptioner whose judgment has been stayed, or where it is payable in installments. But it would be strange that the legislature should make the right of junior judgment creditors to share in a surplus depend on the circumstance that the redemptioner's judgment was stayed, or payable in installments. There are so many reasons why that was not the legislative intent, that we need scarcely stop to enumerate them.

There is just as much reason for distributing such surplus among the junior judgment lien holders where the redemptioner's judgment is not stayed and not payable in installments as where it is. Besides, the lan-

guage "such sale shall discharge the lien of all inter-
vening judgments and decrees," if confined to cases
where the redemptioner's judgment was stayed or
payable in installments, it would leave the interven-
ing judgments in all other cases in full force and un-
discharged—a very unreasonable provision. The
learned counsel for appellant say that: "Even if we as-
sume that the foregoing provision applies to any sale
which may be made on a *venditioni exponas*, in favor of
a redemptioner, still it is perfectly plain that nothing
contained in the foregoing language authorizes the in-
ference that mortgage liens are disturbed or extin-
guished by the sale on a *venditioni exponas*."

It is true that all the sections of the redemption law
we have summarized above, make no mention of mort-
gage liens or other than judgment liens; and if we
shall find no provision in our redemption law con-
cerning mortgage and other liens, it certainly would
be very imperfect.

If junior judgment creditors are to go on and make
redemptions of real estate sold at sheriff's sales under
the statute, and having resales of the same at great
expense, and then an outstanding mortgage, senior
to all the judgments, but, as here, junior to the lien on
which the first sale took place, can be foreclosed by its
holder and wrest the land out of the hands of all the
purchasers, then it can truly be said that our redemp-
tion law is a snare and a pitfall in which to catch the
feet of the unwary. But the legislature did not leave
the law thus imperfect.

The very next section, 786, Burns' R. S. 1894 (774, R.
S. 1881), provides for all other liens. It is therein pro-
vided that: "Any person having a lien, otherwise
than by judgment, upon the real estate, or any parcel
or parcels thereof sold in one body, may, at any
time within one year from said sale, and after he shall

have had his lien duly recorded where, by law, the recording thereof is provided for, redeem the same from the purchaser at said sale, or from any prior redemptioner, and redemption thereof may be made from him upon the same terms and conditions as hereinbefore required in cases of redemption by judgment creditors; and if, at the expiration of one year from the sale on execution, no one shall have redeemed from him, and his lien remains unforeclosed, he shall retain a lien on the real estate so redeemed by him, as of the date of the judgment on which said sale was made and may enforce the same in the suit to foreclose or enforce his lien, or by an independent action; and any sale of said real estate in pursuance thereof shall be absolute, and the purchaser immediately entitled to a conveyance, having the same effect as if his lien, at the time he redeemed, had been in judgment."

This section then provides that any lien holder other than by judgment, which, of course, includes mortgagees, may redeem at any time within one year from the original sale, and redemption thereof may be made from him upon the same terms and conditions as thereinbefore required in cases of redemption by judgment creditors.

One of the terms and conditions of redemption by a judgment creditor is that on a subsequent redemption by a lien holder he must pay to the last redemptioner the amount such redemptioner paid to redeem, costs and interest, and if the lien of the one offering to redeem is junior to the judgment of the last redemptioner, he must pay that also with interest and cost.

Another one of the terms and conditions of redemption by a judgment creditor is that the resale discharges the lien of the judgment on which the original sale is made, and the liens of all intervening judgments and decrees, and if the mortgagee becomes a

redemptioner he must submit to the same terms as the section requires, and his lien is discharged also. And another one of those terms is that if there is a surplus arising from the last sale it must be distributed among the judgment creditors whose liens are junior to that under which the original sale was made, according to their priorities and equities.

The redeeming mortgagee, being placed on the same terms and conditions as junior judgment creditors, is entitled to share with them in the distribution of any surplus that may arise from the last sale, according to their original priorities and equities.

The trial court in this case ordered a *venditioni exponas* on the judgments of the First National Bank, directing the proceeds of the sale to be applied, first to the payment of the amount paid by the bank in redemption, interest and costs, and the two judgments held by the bank, interest and costs, and the surplus, if any, to be paid to the appellant.

Had he availed himself of his right to redeem, he could have received all the proceeds of the second sale to the full extent of the satisfaction of the amount he had paid to redeem from the first sale; cost thereof, and principal and interest of his mortgage; if any surplus remained after that, it would have gone to the bank.

But he did not see fit to exercise his right to redeem, which was his only remedy to secure anything on his second mortgage, which was the second lien. He stands in no better plight than if there had been no redemption from the foreclosure sale on the trust company's mortgage, that being the first and prior lien to all other liens on said lands; and he is in no better condition than if there had been made a deed conveying to the purchaser the land under that foreclosure sale. This is so because the last redemptioner is en-

titled to sell the land on his *veuditioni exponas,* free from all intervening liens. All he could do to get rid of that foreclosure sale was to redeem, and that, too, within one year. And no matter if the bank, the holder of the two judgments, did redeem before appellant could have redeemed, still appellant could thereafter, and within the year, have redeemed without paying said judgments. As against appellant's mortgage, the appellee, the First National Bank, stands in as good a position as if it had received a deed on the certificate of the sheriff's sale on the foreclosure decree on the trust company's mortgage.

But it is contended that certain provisions of the redemption law of 1879, consistent with the act of 1881, still remain in force, under which it is contended that the appellant's mortgage may be foreclosed, notwithstanding appellant has not attempted to redeem.

The act of 1881 covers the entire subject matter of redemption, and as to all sales made subsequent to its enactment, repeals the former statute. *Adams* v. *Glidden,* 111 Ind. 528; *State, ex rel.,* v. *Board, etc.,* 104 Ind. 123; *State* v. *Mason,* 108 Ind. 48 · *State* v. *Wells,* 112 Ind. 237.

It follows, from what we have said, that the cross-complaint states facts sufficient to constitute a cause of action, and that the court did not err in overruling the motion for a new trial.